## HARDIN v. TRIMMIER.

1. A question of jurisdiction may be raised at any time. Being first raised in this case in an exception to the judgment of the Circuit Court, it was considered.
2. The law provides that the Court of General Sessions shall open at S. on the 3rd Monday in March, and the Court of Common Pleas on the Wednesday following ; but if the business of the General Sessions is not then completed, the judge may adjourn the Common Pleas until the sessions business is concluded. *Held*, that all the officers and machinery of the Court of Common Pleas being present in the court house on Wednesday, that court was then opened by operation of law, notwithstanding no formal announcement or entry on the journal, to that effect, was made until the following Friday.
3. The constitutional requirement, that the Court of Common Pleas shall sit at stated times, does not require the statute to name a precise day for its opening.
4. Under a statute which provides· that any person who shall receive as interest any greater amount than is therein permitted, shall forfeit double the sum so received, the forfeiture exacted is only double the sum received in excess of the interest allowed by this statute.

Before WALLACE, J., Spartanburg, March, 1888.

Action by William Hardin against F. M. Trimmier, commenced October 5, 1885. The charge of the judge to the jury is thus reported in the Brief:

His honor having read and explained to the jury the first section of the act of 1882 (18 *Stat.*, 36), said : "The section that I have read to you provides, that if a man make a stipulation in regard to interest that is unlawful, why the person to whom the money is coming cannot collect more than the sum loaned—cannot collect any interest at all. But here is a section that goes on and provides—suppose he does collect it. Suppose the debtor pays it, what then ? Here is what the act says : 'That any per-son or corporatien who shall receive as interest any greater amount than is herein provided for'—that is, either the seven per cent. or ten per cent.—'shall, in addition to the forfeiture herein provided for'—that is, the forfeiture of all his interest, so as not to collect any of it, shall 'forfeit also'—he shall not only lose all his interest, but he shall 'forfeit double the sum so re-

ceived,' as interest, 'to be collected by a separate action, or allowed as a counter-claim to any action brought to recover the principal sum.'

"Now, the court have construed that clause so, that if Hardin had paid this $202 of interest on the note, but had not paid the note, and Trimmier had sued him on the note, he could set up double the $202 as a discount or counter-claim to the recovery, and take it out of the $900. That is what the court says in deciding this very case. So I do not know, gentlemen, that it is necessary that I should say anything more to you. I hope you understand the issues of fact and the law applicable to those facts as you may find them to be. If you find that the plaintiff here agreed with the defendant to borrow $900 from him, and to pay him twenty per cent. interest, and that he has paid him twenty per cent. interest, why, then, as a matter of law, he would be entitled to recover double the amount of interest from him that he had paid him."

The jury found a verdict for the plaintiff for $405.54, on which judgment was entered.

Defendant appealed.

*Messrs. Carlisle & Hydrick,* for appellant.

*Messrs. Thomson, Nicholls & Moore,* contra.

March 19, 1889. The opinion of the court was delivered by

MR. JUSTICE McIVER. Two questions are raised by this appeal—one of jurisdiction, the other as to the proper construction of the second section of the act of 1882, 18 *Statutes*, 35. The facts out of which the question of jurisdiction arises are as follows: By the act of 1886 (19 *Stat.*, 654), the Court of Common Pleas for the County of Spartanburg, in which this case arose and was tried, is required to be held on the Wednesday following the third Monday in March, which, in the year 1888, fell on the 21st day of that month, "but the business of the Court of General Sessions not having been finished by that day, the Court of Common Pleas, as appears by its journals, was not opened, unless by operation of law, until the 23rd day of March," on which day the trial of

this case commenced, and was concluded on the 24th day of March, 1888.   It is stated in the "Case," that "The defendant made no objection at the trial to the legality or jurisdiction of the court, nor was the matter in any way brought to the attention of the Circuit Judge."   He, therefore, made no ruling on the question of jurisdiction, now made for the first time.

If, therefore, this were a question other than that of jurisdiction, we could not, under the well settled rule, consider it.   But as it is a question of jurisdiction, we are bound to consider it, as a question of that character may be raised at any time.   *State* v. *Penny*, 19 S. C., 218; *Bell* v. *Fludd*, 28 *Id*, 313.   The case of *Varney* v. *Vosch* (3 Hill, 237), cited by respondent's counsel to sustain the position that this question cannot be considered because not raised in the court below, was a case in reference to the jurisdiction of a magistrate, an inferior court, and is not, therefore, applicable.

The position taken by appellant in reference to this question, rests upon the assumption that the Court of Common Pleas was not opened at the time prescribed by law, and, therefore, it could not take jurisdiction of any cause pending in that court; and counsel cites, in support of his position, the cases of *Ex parte DeHay*, 3 S. C., 567, and *Ex parte Lilly*, 7 *Id.*, 372.   These cases do support the view, that "If the individuals, who happen to be officers of the court, meet at a time when the court is not required or allowed to sit, and organize themselves as the court, with the usual machinery and ceremony attending it, their acts would be without legal force."   If, therefore, it had been made to appear that the court, which undertook to try this case, had assembled "at a time when the court is not required or allowed to sit," and had proceeded to render the judgment appealed from, then the cases cited would sustain the position that such judgment should be set aside for lack of jurisdiction.   But it does not seem to us that this has been made to appear.   It does appear, from the quotation made from the "Case" above, that on the day fixed by law for the opening of the Court of Common Pleas for Spartanburg County, the Judge of that Circuit was at the place appointed for that purpose, attended by the proper officers, and

it must be assumed that the judge did his duty, and opened the court at the time prescribed by law.

The fact, which also appears from the quotation just referred to, that the judge did not immediately proceed to the dispatch of the business of the Court of Common Pleas, but proceeded first to complete the business of the Court of Sessions, just as the law, presently to be cited, provides that he should do, does not negative the idea that the Court of Common Pleas was opened at the proper time. Nor is it negatived by the fact that there is nothing on the journals to show that the Court of Common Pleas was opened at the time appointed for that purpose; for certainly the failure of the clerk to perform his duty would not oust the jurisdiction of the court. Besides, we are not aware of any statute which prescribes any particular formula for opening a court, or any special entry thereof. It is true, that in *Miller's Compilation*, page 237, a form to be used by the crier in opening the court is laid down, but that is a mere matter of custom and convenience, and surely the failure to observe the form there laid down would not invalidate the jurisdiction of the court. The statute having prescribed a particular day for holding the Court of Common Pleas, and there being no law, so far as we are informed, requiring any particular ceremony to be observed in opening the court, whenever it appears, as it does in this case, that on the day appointed, the judge, attended by the proper officials, was present at the place designated, the court must then be regarded as opened by operation of law, even though the judge may not then, owing to the unfinished business of the Court of Sessions, be able to proceed immediately with the business of the Court of Common Pleas. It seems to us, also, that the legislature, by sections 27 and 27*a* of the Code, have provided for the contingency which arose in this case, and that Judge Wallace, in pursuing the course which he did, was following the law as there laid down.

It is contended, however, that if the legislation just referred to be so construed as to allow the presiding judge to open the Court of Common Pleas either before or after the day appointed by the statute for that purpose, it conflicts with section 16, art. IV., of the Constitution, which provides, that "The Court of

Common Pleas shall sit * * * at such stated times and places as may be appointed by law." In the first place, we do not rest our conclusion only on the provisions of those sections of the code above cited, but we rest it mainly on the ground that, under the circumstances as stated in this case, the Court of Common Pleas must be regarded as having been opened by operation of law on the day appointed by law, even though the presiding judge did not then immediately proceed with the business of that court. It was upon that view that this court proceeded in the case of *McKellar* v. *Parker*, 29 S. C., 237. We may add, however, with a view to avoid misconception, that we do not think the sections of the code above referred to conflict with the constitution. The requirement, that the Court of Common Pleas shall sit at *stated* times, does not necessarily imply that the specific or precise day shall be named in the act; for if that were so, it would be difficult to vindicate legislation providing for the ordering of extra courts by the Chief Justice, or by a Circuit Judge. The word "stated" should not be given such a limited signification as that contended for. When the legislature delegates to the Chief Justice or to a Circuit Judge the power to order a court to be holden, the day designated for that purpose in such order is just as much a *stated* time as if it had been designated by statute. It seems to us, therefore, that there was no lack of jurisdiction in the court which rendered the judgment appealed from.

The only other question raised is as to the proper construction of the second section of the act of 1882 (18 *Stat.*, 36), which reads as follows: "That any person or corporation who shall receive as interest any greater amount than is herein provided for, shall, in addition to the forfeiture herein provided for, forfeit also double the sum so received, to be collected by a separate action, or allowed as a counter-claim to any action brought to recover the principal sum." The question is, whether the amount which the borrower is authorized to recover from the lender, under the provisions of this section, is double the whole amount of interest paid, or only double the amount of the excess thereof over the amount allowed by law. We think that it is the latter.

In the absence of any written agreement, providing for a greater rate not exceeding ten per cent., the legal rate of interest, as pre-

scribed by the first section of the act above referred to, is seven per cent. As there is no such written agreement in the contract now under consideration, the legal rate of interest on the note could only be seven per cent., and any interest charged for or received in excess of that amount would be usurious. And when, in the second section, the act declared that any person "who shall receive as interest any *greater amount* than is *herein provided for*" (which, as we have seen, is seven per cent.), shall forfeit double the amount "*so received,*" it seems to us clear that the meaning is, that if the lender, on such a contract as this, receives an amount greater than seven per cent., he shall forfeit double the sum received in excess of seven per cent. The thing forbidden is to receive interest in excess of seven per cent., and when the act declares a forfeiture of double the amount *so received*, it must mean double the amount of such excess, and not double the whole amount of interest received. The act does not make it unlawful to *receive* interest upon such a contract up to seven per cent., but the illegality consists in *receiving* a greater amount than the seven per cent., for that is the plain meaning of the language—"any greater amount than is herein provided for"— and when it proceeds to fix the penalty for such illegal act, by saying that he shall forfeit double the sum *so received*, the manifest meaning is double the sum illegally received.

It will be observed, that while in the first section of the act it is made unlawful to charge a greater rate of interest than seven per cent., unless, by an express agreement in writing, a greater rate, not exceeding ten per cent., is provided for, under the penalty of forfeiting all interest and costs, the second section of the act deals only with the receipt of a greater rate of interest than is provided for by the act, and provides, in addition to the forfeiture mentioned in the first section, an additional forfeiture of double the sum illegally received. We do not find anything in the second section of the act which imposes any penalty upon the lender for *receiving* interest at the rate of seven per cent. upon such a contract as this is, but the penalty is for receiving a greater amount than such a rate would yield, and the penalty is double the amount in excess of that which he might receive without incurring the penalty imposed by the second section of the act.

For example, if the lender here had only received interest at the rate of seven per cent., we do not see how this action could have been maintained; for no penalty is imposed for such an act, even though, under the circumstances attending this transaction, the lender would not have been allowed, under the provisions of the first section of the act, any interest at all in an action on the note. Our view is supported by the recent decision in the case of *Carolina Savings Bank* v. *Parrott, ante,* 61.

It is argued, however, that the view here taken is in conflict with what was said in the former decision in this case, 27 S. C., 110. It will be observed, that when this case was before this court on a former occasion, the question was as to the right of the plaintiff to recover at all, and not *as to the amount* which the plaintiff might be entitled to recover. Hence, that question was not then either considered or determined. This is frankly conceded by counsel for respondent, but certain language used in the former opinion is relied upon as indicating a contrary view to that herein announced. This impression arises from a failure to observe the distinction, plainly kept up throughout the former opinion, between usurious interest proper—that is, interest in excess of the legal rate—and interest that could not be legally collected, not because it was beyond the legal rate—usurious— but because the statute expressly forbids its collection. Hence, when it was said in the former opinion, "What was the original contract? Under the law, as it then stood, it was simply a contract for the repayment of the sum of nine hundred dollars, the sum actually lent. All beyond that was illegal and void," the plain meaning was that the contract could only be regarded as a contract to pay back the nine hundred dollars without interest even at the rate of seven per cent. ; not because such interest would be usurious, but because the statute made it illegal, and hence the contract for the payment of anything beyond the sum of nine hundred dollars "was illegal and void."

Again, the following language is cited to show that in the former opinion it was indicated that double the whole amount of the interest paid, and not merely double the excess over the legal rate, was recoverable under the second section of the act, to wit: "The act complained of here is the *receiving* of usurious interest,

which occurred after the act of 1882, and which is the subject of the penalty sued for." This quotation, though not precisely accurate, certainly does not, even as quoted, warrant the inference drawn from it by counsel for respondent. The court there spoke only of *usurious* interest, without undertaking to define, or even indicate, whether that term was intended to embrace the entire amount of the sum paid as interest, or only so much thereof as exceeded the legal rate, inasmuch as the *amount* which plaintiff was entitled to recover was not then before the court. The same remark is applicable to the remaining quotation relied upon, viz. : "But if the borrower had paid usurious interest on the note, and after such payment the lender had brought his action to recover the amount of the note, it is clear that the borrower might set up as a counter-claim to such action double the sum of the usurious interest so paid, because the statute so expressly provides. * * * We see no reason why the plaintiff here (*i. e.*, if. there had been an action brought by Trimmier on the note) could not have set up as a counter-claim a demand for double the sum of the usurious interest paid by him."

It is very obvious, that the court, in using the language found in these quotations, employed the terms, "usurious interest," to indicate the measure of the recovery, without the slightest indication as to whether those terms should be understood as embracing the entire amount of the interest paid, or only so much thereof as was in excess of the lawful rate. Indeed, if the language used in these quotations can be regarded as indicating anything as to the point now under consideration, the employment of the adjective "usurious" to qualify the word "interest" would rather seem to indicate that the court did *not* mean the entire interest, but only so much thereof as was usurious—so much thereof as exceeded the legal rate.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and the case remanded for a new trial, unless the plaintiff, within twenty days after the service of written notice of the filing of this opinion, shall enter upon the record a *remittitur* for so much of said judgment as exceeds double the amount of the interest received by defendant, in excess of interest on nine hundred dollars, at the rate of seven per cent. per

annum, from the date of the note to the time of its payment, to wit, for the sum of one hundred and fifty dollars and fourteen cents; and upon the entry of a *remittitur* for that amount, within the prescribed time, the judgment of this court is, that the judgment of the Circuit Court, as thus reduced, be affirmed.