585 S.E.2d 292

**Reather B. TILLEY, Willis E. Wood, Owena R. Wood, and Louise Williams, on behalf of themselves and all others similarly situated, Respondents–Appellants,**

**v.**

**PACESETTER CORPORATION, Appellant–Respondent.**

**No. 25697.**

Supreme Court of South Carolina.

Heard May 14, 2003.

Decided Aug. 11, 2003.

364

Terry E. Richardson, Jr., Daniel S. Haltiwanger, of Richardson Patrick, Westbrook & Brickman, LLC, of Barnwell; and Daryl L. Williams, of Jeter & Williams, P.A., of Columbia, for Appellant–Respondent.

Bradford P. Simpson, Randall Dong, D. Michael Kelly, and Michael J. Cone, all of Suggs & Kelly Lawyers, P.A., of Columbia; Steven W. Hamm, of Richardson, Plowden, Carpenter & Robinson, P.A., all of Columbia; Daniel W. Williams, of Bedingfield & Williams, of Orangeburg; T. Alexander Beard, of Beard Law Offices, of Mount Pleasant; and C. Bradley Hutto, of Williams & Williams, of Orangeburg; all for Respondents–Appellants.

Chief Justice TOAL.

This is a class action in which the trial court granted Respondents/Appellants ("Buyers") summary judgment based on Appellant/Respondent's, Pacesetter Corporation ("Pacesetter"), failure to comply with the attorney and insurance agent preference provisions of the South Carolina Consumer Protection Code.[1] This Court affirmed summary judgment on the issue of liability and remanded for a determination on damages. *Tilley v. Pacesetter Corp.*, 333 S.C. 33, 508 S.E.2d 16 (1998) (*"Tilley I"*). This appeal was taken following the circuit court's determination of damages.

## FACTUAL/PROCEDURAL BACKGROUND

Pacesetter is a Nebraska corporation that sells aluminum windows, awnings, and doors in South Carolina. Buyers in this case each entered into a "Retail Installment Sales Contract and Mortgage" to purchase products from Pacesetter secured by a mortgage on their homes.[2] After entering into

---

1. S.C.Code Ann. § 37–1–101 et seq.

2. The contracts contained the following provision:

OBLIGATIONS PERTAINING TO PROPERTY INSURANCE AND MY REAL ESTATE: 1. I promise to keep my house in good repair and keep it insured for at least 80% of its replacement value by buying fire and extended coverage insurance policy. The insurance company must be approved by you, . . . and the company must agree that it will not cancel my policy without first telling you. I authorize

these contracts, Buyers instituted this action pursuant to S.C.Code Ann. § 37–2–413 (Supp.1996),[3] contending that Pacesetter failed to ascertain their preference of attorney and insurance agent in violation of S.C.Code Ann. § 37–10–102 (Supp.1996).[4] The trial court granted Buyers summary judgment on the issue of liability, and this Court affirmed in *Tilley I*, 333 S.C. 33, 508 S.E.2d 16.[5]

Following this Court's *Tilley I* decision, the case was remanded for a determination of damages and was assigned to the Honorable James C. Williams, Jr. On March 12, 2001,

the insurance company to pay you directly for any loss. You can choose to use this insurance payment to either repay any amounts I owe you or to repair my house. I have the option of providing property insurance through an existing policy or through a policy independently obtained and paid for by me ... 5. If I do not insure my house or fulfill my obligations to my real estate, then you can do it for me (but you do not have to). If you do pay any of these obligations for me, I agree to pay you back on demand plus interest. Until I pay you back, these amounts will be added to my debt to you which is secured by my real estate and house. I know that if you decide to buy insurance for me you do not have to obtain any homeowner or liability insurance.

**3.** Section 37–2–413(2) provides:

With respect to a consumer credit sale that is secured in whole or in part by a lien on real estate the provisions of § 37–10–102(a) apply whenever the seller requires the debtor to purchase insurance or pay any attorney's fees in connection with examining the title and closing the transaction.

**4.** Section 37–10–102(a) provides, in relevant part,

Whenever the primary purpose of a loan that is secured in whole or in part by a lien on real estate is for personal, family, or household purposes—
(a) The creditor must ascertain prior to closing the preference of the borrower as to the legal counsel that is employed to represent the debtor in all matters of the transaction relating to the closing of the transaction and ... the insurance agent to furnish required hazard and flood property insurance in connection with the mortgage and comply with such preference.

**5.** In addition to determining that Pacesetter had violated section 37–10–413(2), this Court held (1) that Buyers could seek remedies set forth in section 37–10–105 as well as section 37–5–202, (2) that the old usury statute, S.C.Code Ann. § 34–31–50, provided the applicable statute of limitations for Buyers' claims–3 years from the date of each payment made on the loan, and finally (3) that certification of Buyers' class by the trial court was proper. *Tilley I*.

Judge Williams issued an order awarding damages pursuant to S.C.Code Ann. § 37–10–105(a) (Supp.1996). Section 37–10–105 was amended in 1997, altering the penalties for violations of the chapter.[6] See 1997 S.C. Acts 99, § 1, eff. June 15, 1997. Buyers initiated this action in 1995, and the trial court granted summary judgment for Buyers in April 1997, prior to the effective date of the amendment. Judge Williams applied the pre–1997 version to award damages, finding that the retroactive application of the amended version of the statute would violate the Due Process clauses of the South Carolina and United States Constitutions.

Judge Williams then ordered Pacesetter to pay damages in an amount equal to the total of the finance charges actually paid by Buyers in all of the consumer credit transactions involving the Class pursuant to subsection (a) of § 37–10–105 and refused to assess penalties pursuant to subsection (b) of § 37–10–105. Judge Williams also declined to award pre-judgment and post-judgment interest on the award, and allowed Pacesetter to set off the damages owed by the amount of the unpaid debt written off by Pacesetter. Finally, Judge Williams granted Pacesetter's post-trial motion to exclude class members who died during the pendency of the proceedings. The order calculated the total amount of the judgment, prior to setoff, to be $3,273,010.52.

Both Buyers and Pacesetter appealed, raising the following issues in their cross-appeals:

Buyers' Issues:

I.  Did the circuit court err in applying the pre–1997 version of § 37–10–105 to assess penalties against Pacesetter based on its finding that applying the 1997 amendment to § 37–10–105 to Buyers' claims would violate Due Process?

II. Did the circuit court err in refusing to award damages under subsection (b) of original § 37–10–105

---

**6.** The amendment prohibited class actions prospectively, and established that debtors proving violations would be awarded penalties ranging from $1,500 to $7,500. The circuit court found that, in this class action, the penalties assessed against Pacesetter would be far greater under the amendment than under the pre–1997 version.

after awarding damages under subsection (a) of original § 37–10–105?

III. Did the circuit court err in refusing to award pre-judgment interest on the award?

IV. Did the circuit court err in ordering that the damages awarded to the class members be set off by the amount of any unpaid debts written off by Pacesetter?

V. Did the circuit court err in excluding class members who died during the pendency of this action where the applicable statute does not require fraud and deceit to award damages?

Pacesetter's Issues:

VI. Did the circuit court err in finding Pacesetter had charged an improper fee and, thereby, in awarding any damages under original § 37–10–105(a)?

VII. Did the circuit court err in granting Buyers' motion to conform, and then in modifying the class definition that was originally pled by Buyers and certified in June 1996?

VIII. Did the circuit court err in adding a subclass of plaintiffs whose claims were barred by the statute of limitations set out in *Tilley I?*

IX. Did the circuit court err in refusing to send notice of the pendency of this action to absent class members?

## LAW/ANALYSIS

### I. Application of § 37–10–105

■ Buyers argue that the circuit court erred in applying the pre–1997 version of § 37–10–105 ("**original § 37–10–105**") to determine Buyers' damages instead of applying the 1997 amended version of § 37–10–105 ("**new § 37–10–105**"). We disagree.

Judge Williams refused to apply new § 37–10–105 on grounds that applying it would violate Pacesetter's right to Due Process because Buyers' claims accrued and were filed

prior to the amendment, summary judgment had been granted for Buyers prior to the effective date of the amendment, and Pacesetter's penalties would be greater under new § 37–10–105 than they would be under original § 37–10–105.[7] The circuit court recognized that the purpose of the amendment was to decrease liability for violations of the attorney and insurance preference statutes, but found that, in this case, the amended version would have the opposite effect, resulting in far greater penalties for Pacesetter's violations.

Original § 37–10–105 provided, in relevant part,

With respect to a loan transaction subject to the provisions of this chapter, any person who shall receive or contract to receive a loan finance charge or other charge or fee in violation of this chapter shall forfeit—

(a) the total amount of the loan finance charge and the costs of the action; and the unpaid balance of the loan shall be repayable without any loan finance charge;

(b) double the amount of the excess loan finance charge or other charges or fees actually received by the creditor or paid by the debtor to a third party, to be collected by a separate action or allowed as a counterclaim in any action brought to recover the unpaid balance.

S.C.Code Ann. § 37–10–105 (Supp.1996). The 1997 amendment to § 37–10–105 changed the penalty structure to a per debtor penalty and prohibits class actions. New § 37–10–105 provides, in relevant part,

(A) If a creditor violates a provision of this chapter, the debtor has a cause of action, other than in a class action, to recover actual damages and also a right in an action, other than in a class action, to recover from the person violating this chapter a penalty in an amount determined by the court of not less than one thousand five hundred dollars and not more than seven thousand five hundred dollars. No debtor may bring a class action for a violation of this chapter. No

---

7. The circuit court dismissed Pacesetter's argument that applying the amendment would violate separation of powers under the rationale explained in *Steinke v. South Carolina Dept. of Labor, Licensing & Reg.,* 336 S.C. 373, 520 S.E.2d 142 (1999). We agree; the statute was amended by the legislature, and there was no intervening action by this Court. Consequently, nothing has occurred to create a separation of powers conflict.

debtor may bring an action for a violation of this chapter more than three years after the violation occurred, except as set forth in subsection (C). The three-year statute of limitations applies to actions commenced after May 2, 1997. No inference should be drawn as to the applicable statute of limitations for any pending actions. This subsection does not bar a debtor from asserting a violation of this chapter in an action to collect a debt which was brought more than three years from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action.

S.C.Code Ann. § 37–10–105 (Supp.1997 & Rev.2002).[8]

The circuit court appears to have based its decision on the "harsh and oppressive" results that applying new § 37–10–105 would have on Pacesetter. *See U.S. Trust Co. v. New Jersey,* 431 U.S. 1, 17 n. 13, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977) (noting that "[t]he Due Process Clause of the Fourteenth Amendment generally does not prohibit retrospective civil legislation, unless the consequences are particularly 'harsh and oppressive' ") (citations omitted). Throughout its order, the circuit court expressed a sense that applying new § 37–10–105, enacted *after* the Buyers' claims accrued and were filed and after summary judgment on the issue of liability was granted, was unfair under some other, yet undefined, principle. The circuit court explained,

Without relying on—and being bound by—definitions and distinctions, such as "vested," "right," "remedy," and the like, the Court finds that, at the time [Buyers] were granted summary judgment on liability, the interests of the parties to this action became fixed. They knew that any damages awarded to [Buyers] and assessed against Pacesetter were somewhere within the parameters of original § 37–10–105. Who can say that their respective actions in this litigation from that point were not determined by this knowledge of

---

**8.** The stated purposes of the 1997 amendment to § 37–10–105 were to (1) delete certain penalty provisions, (2) to create a private cause of action and to prohibit class actions for violations of this chapter, (3) to set elements of recoverable damages, and (4) to make the new provisions apply to causes of action, including appeals, pending on May 2, 1997, and to limit recovery in class actions filed before that date. 1997 S.C. Acts 99.

the potential damages under the original statute? This Court certainly cannot and must hold that the amendment should not be applied in this action.

We agree that original § 37–10–105, not new § 37–10–105, should be applied to determine Buyers' damages. We base this conclusion on South Carolina's "retroactivity" jurisprudence, and, accordingly, find that it is unnecessary to address whether new § 37–10–105, as applied to Pacesetter, violates Due Process.

In *Stephens v. Draffin*, 327 S.C. 1, 488 S.E.2d 307 (1997), this Court discussed the impact of its earlier decision in *Nelson v. Concrete Supply Co.*, 303 S.C. 243, 399 S.E.2d 783 (1991) (prospectively abrogating the doctrine of contributory negligence in favor of comparative negligence). In *Stephens*, Stephens brought a medical malpractice action against his doctor when he became addicted to the narcotic drug (Percocette) prescribed to him by his doctor. Stephens' wife brought a loss of consortium claim against the doctor. *Stephens*, 327 S.C. at 3, 488 S.E.2d at 308. Stephens was a patient of the doctor's from 1985 until May 1992. *Id.* This Court abrogated contributory negligence, effective July 1, 1991. *Nelson.* The Stephenses argued that the trial court erred in charging the jury with both contributory and comparative negligence, and that comparative negligence alone should have been charged.

The Court found the question of *when* the Stephens' causes of action arose to be dispositive because "the law in effect at the time the cause of action accrued controls the parties' legal relationships and rights." *Stephens*, 327 S.C. at 5, 488 S.E.2d at 309. Applying *Brown v. Finger*, 240 S.C. 102, 124 S.E.2d 781 (1962), the Court found that "[a] cause of action accrues at the moment when the plaintiff has a legal right to sue on it." *Stephens*, 327 S.C. at 4–5, 488 S.E.2d at 309. The Court then held that both Stephens' and his wife's actions accrued long before July 1, 1991, the date contributory negligence was abrogated, and, therefore, that their claims were controlled by the doctrine of contributory negligence, as that was the rule in effect when their claims first accrued. *Id.*

In the present case, all of the Buyers' claims accrued prior to the date they filed this class action in 1995.[9] At the time Buyers' claims accrued and were filed, original § 37–10–105 was in place. In addition, original § 37–10–105 was in effect when the trial court granted summary judgment on the issue of liability in April 1997. Under this analysis, original § 37–10–105 should be applied to determine Buyers' damages, not the 1997 amendment to that section.

## II. Applicability of § 37–10–105(b)

■ Buyers argue that the circuit court erred in awarding damages only under subsection (a) of original § 37–10–105, and finding subsection (b) inapplicable in this case. We disagree.

As noted previously, original § 37–10–105 provides, in relevant part,

With respect to a loan transaction subject to the provisions of this chapter, any person who shall receive or contract to receive a loan finance charge or other charge or fee in violation of this chapter shall forfeit—

(a) the total amount of the loan finance charge and the costs of the action; and the unpaid balance of the loan shall be repayable without any loan finance charge;

(b) double the amount of the *excess* loan finance charge or other charges or fees actually received by the creditor or paid by the debtor to a third party, to be collected by a separate action or allowed as a counterclaim in any action brought to recover the unpaid balance.

S.C.Code Ann. § 37–10–105 (Supp.1996) (emphasis added). In its order, the circuit court determined that subsection (b) created an additional penalty for those who charged interest rates in excess of the statutory maximum. Because no evidence was presented that Pacesetter charged "excess" interest on any of the transactions at issue, the circuit court refused to award damages under subsection (b).

---

9. In *Tilley I,* we determined that the statute of limitations for these claims runs for three years from the time each payment is made on the loan. *Tilley I,* 333 S.C. at 42, 508 S.E.2d at 20. Consistent with this finding, we find that the Buyers' claims *accrued* with the first payment each buyer made on his or her loan.

In our opinion, the circuit court's analysis is correct. Although the provisions of the consumer protection code are to be liberally construed in favor of the consumer, its provisions must still be read in accordance with the first rule of statutory construction: giving words their plain and unambiguous meaning.

> When the language of a statute is plain, unambiguous, and conveys a clear and definite meaning, the application of standard rules of statutory interpretation is unwarranted. *Paschal v. State Election Comm'n*, 317 S.C. 434, 454 S.E.2d 890 (1995); *Miller v. Doe*, 312 S.C. 444, 441 S.E.2d 319 (1994). The statutory terms, therefore, must be applied according to their literal meaning. *Paschal*, 317 S.C. at 436, 454 S.E.2d at 892; *Holley v. Mount Vernon Mills, Inc.*, 312 S.C. 320, 440 S.E.2d 373 (1994). In such circumstances, this Court simply lacks the authority to look for or impose another meaning and may not resort to subtle or forced construction in an attempt to limit or expand a statute's scope. *Paschal*, 317 S.C. at 437, 454 S.E.2d at 892; *Berkebile v. Outen*, 311 S.C. 50, 426 S.E.2d 760 (1993).

*State v. Benjamin*, 341 S.C. 160, 163, 533 S.E.2d 606, 607 (Ct.App.2000). In our view, use of the word "excess" in subsection (b) is plain and unambiguous. Giving "excess" its literal meaning is thus required; this Court cannot overlook the word's plain meaning in an attempt to apply the statute liberally.

Beyond the plain meaning of the word "excess," there is historical support for the circuit court's interpretation of subsection (b). The circuit court conducted a thorough review of the legislation that preceded original § 37–10–105: the various versions of South Carolina's now repealed usury penalty. In so doing, the circuit court followed this Court's lead in *Tilley I* when it used the statute's history to conclude that the appropriate statute of limitations was that previously available for a usury claim. *Tilley I*, 333 S.C. at 42, 508 S.E.2d at 20.

> Section 37–10–105 recodifies the penalty for usury in former S.C.Code Ann. § 34–31–50. The statute of limitations for an action seeking the remedies recoverable for usury begins to run at the time each payment is made on the loan. Accordingly, although we find the three year

statute of limitations applicable, it begins to run from each payment, such that plaintiffs' claims are not barred.

*Id.* Similarly, the circuit court compared § 34–31–50 (the old usury statute), repealed by 1982 S.C. Acts 835, with prior versions of § 34–31–50, and with § 37–10–105 at issue here.

Section 34–31–50 provided,

> Any person who shall receive or contract to receive as interest any greater amount than is provided for in § 34–31–30 shall forfeit all interest and the costs of the action and such portion of the original debt as shall be due shall be recovered without interest or costs. When any amount so charged or contracted for has been actually received by such person he shall also forfeit *double* the *total* amount received *in respect of interest.*

S.C.Code Ann. § 34–31–50 (1976) (emphasis added). Section 34–31–50 was very similar to the 1898 version of the usury statute which provided that any person or corporation charging or contracting for interest in excess of the legal rate who has actually received such interest "shall also forfeit *double* the *total* amount received *in respect of interest.*" 1898 S.C. Acts 39, § 2 (emphasis added).

The 1898 Act was construed by this Court in *Frick Co. v. Tuten,* 204 S.C. 226, 232, 29 S.E.2d 260, 262 (1944), as follows:

> upon contracting for illegal interest, the usur forfeits all interest, that which he may have contracted legally to receive and the excess as well; and should he actually receive usurious interest he is made to forfeit (pay back) double the total amount received.

Apparently, the 1898 Act was a reaction by the General Assembly to the Court's interpretation of the 1882 usury statute. *Frick.* In *Hardin v. Trimmier,* 30 S.C. 391, 9 S.E. 342 (1889), the Court interpreted the following language to impose double the sum of the amount of interest collected *in excess of* the legal interest rate: "That any person or corporation who shall receive as interest any greater amount than is herein provided for shall, in addition to the forfeiture herein provided for [all interest], forfeit also *double the sum so received.*" 1882 S.C. Acts 21. The *Hardin* court made the following interpretation,

It seems to us clear that the meaning is, that if the lender, on such a contract as this, receives an amount greater than seven per cent., he shall forfeit double the sum received in excess of seven per cent. The thing forbidden is to receive interest in excess of seven per cent., and when the act declares a forfeiture of double the amount *so received,* it must mean double the amount of such excess, and not double the whole amount of interest received.

*Hardin v. Trimmier,* 30 S.C. at 396, 9 S.E. 342 (emphasis in original).

As § 34–31–50 shares language most similar to the 1898 version, it follows that under that provision, the penalty was double the total amount of interest received. When the legislature then repealed § 34–31–50 in 1982 and simultaneously enacted § 37–10–105, the use of the word "excess" in the latter marks an intentional change. In light of the historical interpretation of the usury statute, it is apparent that the legislature chose the word excess with the purpose of altering the existing usury penalties. As Buyers have presented no evidence of interest in excess of the legal interest rate, the circuit court correctly refused to assess penalties under subsection (b) of original § 37–10–105.

### III. Pre–Judgment Interest

Buyers argue they are entitled to prejudgment interest from October 27, 1995, the date the action was filed, to April 3, 1997, the date of entry of summary judgment. We disagree.

This Court requires parties to plead for pre-judgment interest in order for it to be recovered. *Hopkins v. Hopkins,* 343 S.C. 301, 540 S.E.2d 454 (2000); *Calhoun v. Calhoun,* 339 S.C. 96, 529 S.E.2d 14 (2000). If no request for pre-judgment interest is made in the pleadings, it cannot be recovered on appeal. *Id.* If pre-judgment interest is pled for in the complaint, it "is allowed on obligations to pay money from the time the payment is demandable, either by agreement of the parties or by operation of law, if the sum is certain or capable of being reduced to certainty." *Future Group, II v. Nationsbank,* 324 S.C. 89, 101, 478 S.E.2d 45, 50 (1996).

In this case, the Buyers did not plead for pre-judgment interest in their original complaint of October 27, 1995, or in

their amended complaint of January 23, 1996. Under the rule established in *Calhoun* and *Hopkins*, Buyers cannot now recover pre-judgment interest.[10] Further, Buyers had no right to demand Pacesetter pay penalties until Pacesetter's liability was established because the amount recoverable was not a "sum certain." *See Future Group, II.* Buyers claimed penalties under new § 37–10–105, and Pacesetter claimed penalties should be assessed under original § 37–10–105. As the amount of damages varies greatly depending on which version of the statute is applied, it is difficult to see how the amount recoverable could qualify as a "sum certain."

For these reasons, Buyers are not entitled to pre-judgment interest.

### IV. Setoff

■ Buyers argue that the circuit court erred in granting Pacesetter's request for setoff of the amount of any principal written off by Pacesetter and could deduct such amount from the penalties it paid to Buyers. We disagree.

After the circuit court issued its order granting setoff, Buyers moved for the circuit court to reconsider, claiming the court erred by ordering setoff of amounts claimed to be in default without affording any opportunity for evidentiary review by Buyers or the court. In response, the circuit court ordered Pacesetter to produce to Buyers' counsel, prior to disbursement of funds, all identifying information in Pacesetter's possession pertaining to each individual class member, and the amount of any setoff to which Pacesetter claims to be entitled, along with all evidence to support its entitlement to setoff. Buyers note in their brief that Pacesetter has produced no such evidence to date.

Although Buyers claim that Pacesetter's claim for setoff came too late (after summary judgment on liability was granted), they offer no authority in support of this proposition. As such, we see no reason why Pacesetter cannot request setoff before the circuit court during the damages portion of the

---

**10.** Buyers moved to amend their complaint to request pre-judgment interest when their damages case was pending before the circuit court. Judge Williams found their request for pre-judgment interest untimely and denied it.

case. The circuit court's post-trial order requires Pacesetter to produce evidence of its entitlement to setoff prior to disbursement of funds, and that order still stands. In order to receive any setoff, Pacesetter will have to produce this evidence. Therefore, Pacesetter should be allowed to setoff the award by the amount of principal Pacesetter has written off per class member. As the circuit court noted, set offs will be applied on an individual class member basis only and will have no effect on the awards to class members not in default and whose principal loan amount was not written off by Pacesetter.

## V. Deceased Class Members

■■■■ Buyers argue that the circuit court erred in granting Pacesetter's motion to exclude deceased class members. We agree.

The circuit court held that the interests of the parties became fixed with the April 3, 1997, order granting summary judgment on the issue of liability. Pacesetter concedes that the class members alive on the date of summary judgment remain part of the class regardless of subsequent death, but argues that those members of the originally defined class who predeceased the April 3, 1997, order do not survive as members of the class.

South Carolina's general survivability statute has a wide ambit that includes all causes of action not covered by specific exceptions. South Carolina Code Ann. § 15-5-90 (1976) provides that "[c]auses of action for and in respect to ... any and all injuries to the person or to personal property shall survive both to and against the personal or real representative ... of a deceased person ... any law or rule to the contrary notwithstanding." Over the years, this Court has created certain exceptions to the survivability statute. *See, e.g., Estate of Covington v. AT & T Nassau Metals Corp.*, 304 S.C. 436, 405 S.E.2d 393 (1991) (workers' compensation claims); *Brown v. Bailey*, 215 S.C. 175, 54 S.E.2d 769 (1949) (actions for malicious prosecution); *Carver v. Morrow*, 213 S.C. 199, 48 S.E.2d 814 (1948) (actions for slander); *See Ferguson v. Charleston Lincoln Mercury*, 349 S.C. 558, 564 S.E.2d 94 (2002) (actions for fraud and deceit).

Pacesetter argues that this action does not survive the deceased class members' deaths pursuant to the fraud and deceit exception to the general survivability statute. *Ferguson.* In *Ferguson*, this Court held that a cause of action brought under the South Carolina Regulation of Manufacturers, Distributors, and Dealers Act ("Dealers Act") [11] did not survive the death of the plaintiff. *Id.* The plaintiff alleged that the Dealer included an improper fee in the purchase price of the car and concealed that price through either fraudulent actions or negligent practices. *Id.* The Dealers Act defined fraud broadly, to include "a misrepresentation in any manner, whether intentionally false or due to gross negligence, of a material fact; a promise or representation not made honestly and in good faith; and an intentional failure to disclose a material fact." S.C.Code Ann. § 56–15–10(m). This Court reasoned that plaintiff's cause of action was grounded in fraud and deceit and thus did not survive his death under that exception. *Ferguson.*

The Consumer Protection Code and the Dealers Act share a common purpose: protection of the consumer. However, the Dealers Act arguably expanded the definition of fraud to include actions that would not normally amount to fraud. The Consumer Protection Code does not define fraud at all. Ferguson alleged that the Dealer had committed an unfair act by failing to disclose a closing fee in the price of the car Ferguson purchased. *Ferguson.* In this case, Buyers charge Pacesetter with violating the statutory mandate of S.C.Code Ann. § 37–10–102 in failing to notify them of their right to choose an attorney and insurance agent of their preference. Neither § 37–10–102 nor the penalty section, § 37–10–105, refer to violation of the statutory preference requirements in terms of unfairness, fraud, or deceit.

Whether or not a cause of action for violation of the attorney/insurance preference statute amounts to an action brought on a theory of fraud and deceit is an issue of first impression for the court. The Buyers' claims here are based on a simple violation of a statutory requirement; the penalties for violating the statutory preference provisions of § 37–10–102 are absolute and do not depend on actual fraud. Further,

---

11. S.C.Code Ann. § 56–15–130 (Supp.2001).

the Consumer Protection Code, within which the preference provisions are contained, does not define fraud. For these reasons, we hold that the claims presented here are not grounded in fraud and deceit and, accordingly, survive a class member's death.[12]

## VI. Improper Fee

■■■ In its status as Appellant, Pacesetter argues that the circuit court erred in awarding damages under original § 37–10–105 at all because Pacesetter did not charge any "improper" fees. We disagree.

This Court's finding of liability in *Tilley I* answers this question in the negative. As discussed in Part II of this opinion, there is no evidence that Pacesetter charged Buyers an illegal interest rate, in the sense that the rate was beyond that legally allowable. However, original § 37–10–105(a) only requires that the defendant receive or contract to receive a fee "in violation of this chapter" in order to be subjected to the statute's penalties under subsection (a). S.C.Code Ann. § 37–10–105 (Supp.1996). The chapter is violated whenever a creditor fails to ascertain the buyer's preference as to legal counsel and insurance agent. S.C.Code Ann. § 37–10–102(a). Therefore, charging any fee, no matter how reasonable, triggers the penalties of original § 37–10–105(a) when the creditor fails to ascertain the buyer's attorney/insurance agent preference as Pacesetter did here. Accordingly, we find this issue to be without merit.

## VII. Motion to Conform

■■■ Pacesetter argues that the circuit court erred in granting Buyers' motion to conform the class definition to the statute of limitations established by this Court in *Tilley I*, which resulted in the addition of almost 1,500 class members to the class as originally defined by Buyers. We agree.

---

**12.** In addition, Pacesetter argues that the members of the class added following Pacesetter's February 19, 2001, motion to conform who predeceased entry of that order do not survive as members of the class. Because we reverse the circuit court's decision to conform the class in Part VII of this opinion, it is unnecessary for us to address the status of those who would have been added to the class by that order but who are now deceased.

The original complaint, filed on October 27, 1995, contained the following definition of the class to be certified:

The class consists of all individual mortgagors who executed Promissory Notes and Mortgages in South Carolina to Pacesetter after July 1, 1982, and **said mortgages are still outstanding** in connection with the transactions more particularly described hereinafter.

(emphasis added). The January 19, 1996, amended complaint contained an identical class description. In addition, the interrogatories that Buyers submitted to Pacesetter inquire about the mortgages currently held by Pacesetter. Summary judgment on liability was granted without any change in the class definition, and was then affirmed by this Court in *Tilley I.*

On February 19, 2001, Buyers moved to conform the pleadings and class definition, arguing that the statute of limitations established in *Tilley I* modified the class definition. In *Tilley I,* this Court held that the applicable statute of limitations ran three years from the date of each payment made on the loan. 333 S.C. at 42, 508 S.E.2d at 20. Buyers now contend that the class definition should be modified because the statute of limitations set by this Court made more of Pacesetter's customers eligible than Buyers had contemplated.[13] The circuit court recognized that granting this motion would expand the putative class membership by some 1,500 persons whose mortgages had been released before this lawsuit was filed, but concluded that the "expansion was required by the Supreme Court's ruling."

We disagree that our *Tilley I* opinion requires any such modification to the class, and believe that allowing the Buyers to modify the class definition they chose at this late date would be unfair. *Tilley I* did not address the choice of class definition made in the pleadings, and it was not raised by the parties, or by this Court *sua sponte.*

Rule 23(d)(1), SCRCP, addresses the procedure for entering and altering a certification order.

As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order

---

**13.** Buyers had limited the class to those customers of Pacesetter with outstanding mortgages when the complaint was filed in October 1995.

whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits.

When the circuit court's grant of summary judgment on the issue of liability and this Court's affirmed, a "decision on the merits" was made. The definition espoused by the Buyers in their original and amended complaints was adopted by the courts and used by the parties as the working definition of the class. The fact that the Buyers limited the class more than was necessary to fit within the statute of limitations was the result of a strategy choice, and, according to Rule 23(d)(1), SCRCP, is one that they have to live with since a decision on the merits was made. The portion of the circuit court's order granting Buyers' Motion to Conform the class is therefore reversed.

### VIII. Statute of Limitations for New Subclass

In our opinion, the circuit court improperly expanded the class definition. As such, it is unnecessary to determine whether the claims of the added subclass are barred by the statute of limitations.

### IX. Notice to Absent Class Members

Pacesetter argues that the circuit court erred in agreeing to defer the mailing of the class notice to absent class members until the conclusion of this appeal. We disagree.

During the damages phase, the Buyers informed the circuit court that they intended to appeal some of that court's rulings, and requested that the mailing of the class notice be deferred until the issues had been resolved on appeal. Recognizing that this Court could modify the content of any class notice Buyers created, in order to avoid the expense and confusion that mailing two notices could cause, the circuit court agreed to defer mailing the class notice.

Rule 23(d)(2), SCRCP, provides that the court "may order that notice be given in such a manner as it may direct of the pendency of the action by the party seeking to maintain the action on behalf of the class." The Notes to this rule, however, state that "[t]his rule requires those seeking to maintain an action on behalf of a class to notify the members of the class of the pendency of the action."

In our opinion, the circuit court made a good practical decision in agreeing to defer the mailing of the class notice until after the conclusion of this appeal. As it turns out, the definition of the class has changed since the circuit court issued its order. If the circuit court had ordered Buyers to mail the class notices in 2001 when it issued its order, approximately 1,500 class members would have received notices indicating they could join the class who, in fact, are not eligible to join the class. The circuit court did not eliminate the requirement that a class notice be mailed to absent class members; it simply delayed the mailing of the notice until this Court finalized the definition of the class. As such, we believe the circuit court made the correct decision. Following this Court's decision, the parties must mail a notice to the absent class members according to the definition created by the Buyers in their original complaint and used by the parties throughout *Tilley I.*

### CONCLUSION

For the foregoing reasons, we **AFFIRM** the circuit court on issues I, II, III, IV, VI, and IX, and **REVERSE** on issues V and VII, and find it unnecessary to address issue VIII.

MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.