The opinion of the Court was delivered by
Nott, Ji
The motion for a new trial in this'case, is predicated on several misdirections of the presiding Judge, on the points of law, and errors of the jury in matters of fact. But I believe the whole case may be considered under the question of misdirection, except that part which relates to the credibility of the witnesses. But as that was a matter for the consideration of the jury,- the Court consider it as settled by their verdict ; for although there was two witnesses to one, yet the testimony of one credible witness is worth more than that of two who are not entitled to belief. And it is within the province of the jury to give it that preference if they think proper. Considering the facts settled by the verdict, I will proceed to the questions of law submitted in the brief.
*A new trial is asked for on the ground of misdirection of the judge.
1. In telling the jury that certain bills of lading, signed by Captain Burrows, and specifying the weight of the cargo to be nett weight, were good evidence to explain the charter party, which specifies only “ British weight,” without saying gross or nett.
2. In stating to the jury, that if they believed the supercargo, the freight from Lisbon - to Cadiz was excessive, and might be reduced, though the said supercargo paid the same after a full delivery of the cargo, when there could be no coercion on the part of the captain, upon which ground alone it is pretended that payment can be recovered back in this action.
3. For directing the jury to give interest on some of the items, whereas the Constitutional Court in the case of Smith and Taylor, have determined that interest is not recoverable in an action for money had and received.
4. For stating to the jury that the supercargo, under the charter party, had a right, after entering the port of Lisbon, to order the ship to go to Fayal.
The part of the charter party, to which it is necessary to recur in considering the first ground, is in the following words: “ The affreighters oblige themselves immediately and without delay to proceed, &c., to pay five pound British sterling per ton of two thousand two hundred and forty pounds, for the rice, and one penny halfpenny per pound for cotton, all British weight.” The rule of law to which our attention is so frequently called, that parol evidence cannot be admitted to contradict, add to, or vary the terms of a will, deed or other written instrument, is admitted, and has lately been recognized in its fullest extent by this Court in several cases; and although the evidence received in this case was written, yet it is upon the principle that inferior evidence ought not to be admitted to control *31 that of a higher nature, that it is contended it ought to have been rejected. But there is another rule of law equally well established, that a latent ambiguity in a deed may be removed by parol evidence ; and if the word “weight,” *is susceptible of two meanings, such evidence was admissible, to ascertain in which sense, according to commercial usage, it ought to be understood in this case. And that it is capable of two meanings, I shall give no other evidence, than that the learned gentleman who made out this brief^ has made use of the terms, “ gross” and “ nett,” as applicable to it.[1] To determine, therefore, whether the price to be paid was on the gross or nett weight, the introduction of such evidence was unquestionably proper [2] but even if that evidence should be rejected, the fact which it went to support, was sufficiently established without it, by two very credible witnesses. Having satisfactorily shown the defendant was entitled to receive payment on the nett weight only, the plaintiffs were entitled to recover back the difference between what ought to have been paid on the rice, and that which actually was paid. But it appears doubtful whether the nett weight of the cotton in England would not have been equal to the gross weight here, the Court is of opinion, that the plaintiffs did not make out that part of their case, and were not entitled to recover back any thing on that account. The ver» diet of the jury, therefore, is so far erroneous.
The next ground which I shall consider, is the fourth in the order in which they were stated in the brief. In order to a correct determination of this question, it is necessary to recur again to the charter party. The part to which our attention is now drawn, is in the following words:
“ The captain to depart immediately and proceed on his voyage directly to the port of Lisbon; but if Lisbon is in possession of the French, then, and in that case, the said ship is to proceed to Fayal, and there discharge the cargo, and in this case, no additional freight is to be paid; but if the affreighters choose to order the vessel to Fayal, when she could safely discharge her cargo at Lisbon, then, an additional freight of one farthing sterling is to be paid per pound.” At the bottom of the charter party is added the following note : “ It is clearly *understood and agreed to by the parties, that if the said ship Ariadne, enters into the port of Lisbon, she shall there discharge her cargo, and the voyage end and determine.” The question now is, whether this vessel had made such an entry into the port of Lisbon, as, in contemplation of the parties, determined the voyage.
I will consider the question, first with reference to the contract as it appears on the face of the instrument, without regard to the evidence; and secondly, with reference to the testimony given on this part of the case.
The deed contains these several provisions. 1st. That the captain shall sail immediately for Lisbon. 2d. If Lisbon is in possession of the French', then he may depart immediately for Fayal, without any additional charge. 8d. If she can discharge her cargo with safety at Lisbon, but the affreighters, nevertheless, ■ choose to order her to Fayal, they may do so, upon paying the additional sum of one farthing sterling per pound. And lastly, if she enters into the port of Lisbon, she shall discharge her cargo, and the voyage end and determine.
*32 It is a rule of law, that where the,different parts of a deed are seemingly contradictory, to give such construction to it, as will give effect to every part, if it is susceptible of such a construction. I feel no difficulty in-reconciling the apparently conflicting clauses in this contract. The first gives to the affreighters an election to dispose of the cargo at Lisbon, or to depart for Faiyal, at their discretion. The last is intended to guard against an abuse of that power. The supercargo, who was the agent of the affreighters, was authorized to go to Lisbon, in order to obtain the information necessary to the exercise of the discretion with which he was vested. But, if he had made an election to discharge the cargo, then the voyage would have been at an end. It became a question of fact, then,, whether the stoppage at Lisbon was an entry into the port with a view to terminate the voyage, or merely for the purpose of information. And that fact has been settled by the verdict of the jury.
This construction seems so necessarily to result from the different* parts of the deed when taken together, it did not appear to me, that there was any room to entertain a rational doubt about it. And by a reference to the testimony of Mr. Haslett and Mr. Maxwell, it appears that this view, of the subject comports also with the 'opinions of commercial men, on the subject. It was'consistent with the usual course of trade to Cadiz or Fayal, at that time, to touch at Lisbon'. But it was not considered as a termination of the voyage, without some declaration or act, manifesting such an intention. In the case of Holst v. Pownal and Spencer, (1 Espinasse Cases, 240,) which was a case of stopping in transitu ; the ship had arrived at Liverpool, her place of destination, on the 9th of June, but was ordered back to Hoylake for the purpose of performing quarantine. Before her arrival, the consignees had become bankrupt. On the day she did arrive, one of the assignees of the bankrupt’s estate, went on board and claimed the goods, and put persons on board to keep possession, On the 11th, eight days afterwards, and while she was performing quarantine, an agent of the consignor claimed her in his behalf, and the question was, whether the voyage was so far completed, that this was not a stoppage in transitu. Lord Kenyon said, that the voyage was not completed till she had performed quarantine, till which time she was in transitu. And a great number of authorities, to which I have not had time to refer, are .there cited to support that position. That is a stronger case than the one now under consideration; for there the vessel had actually entered the port, and was ordered back; but here she had not attempted to enter the port of Lisbon, but had merely stopped at Belem Castle for the purpose of obtaining information.
I come now to the second ground stated in the brief.
Wherever a person obtains money by extortion or oppression, or by taking undue advantage of the situation of the party, or where aequ'o et bono he ought not to retain it, the law will compel a repayment of it in this form of action. 1 Esp. Dig. 14, Gould’s Ed. 6; Shove *v. Webb, 1 Term, 73; Cowper, 197; Dark v. Shee and Johnson, 2 B. & P. 467; Bize v. Dickason, 1 T. R. 285; Astley v. Reynolds, 2 Str. 915; 2 Esp. Rep. 548, in a note by. day.[1] Having laid down the rule, I shall be contented with showing that this case comes within it, *33 without attempting to notice all the conflicting cases on the subject. It is not pretended that an action will lie to recover back money, in every case of hardship. But if it will lie in any case, where money has been obtained, or acquired by taking an undue advantage of the situation of the party, this is one. The plaintiff’s agent was in a distant country, and was reduced to the alternate of having the cargo thrown on shore, where more than one half of it would be swallowed up by the duty imposed upon it, and the other in imminent danger of falling almost instantly into the hands of an invading enemy, or of submitting to the terms imposed by the captain. And although the money was not paid until some time afterwards, yet his situation was not less difficult than when he entered into the contract. He had been compelled to execute a written contract, by which he was bound. He was called upon to perform it in a foreign country; resistance would have subjected him to arrest, without the possibility of making a defence. He must have been the party, and would have been without witnesses. The captain had been guilty of a gross dereliction of duty in not going to Fayal. He had compelled the supercargo to violate his instructions, and extorted from him the plaintiff’s money in such a manner, that his principal is not, in equity and good conscience, entitled to retain it. To be sure these facts are supported only by the oath of the supercargo, against the oaths of the captain and mate; but as the jury have thought proper to believe him in preference to them, we must now take them as true. It has been urged in the course of the argument, (though it did not make a part of the case below, nor' make a ground in the brief,) that this action will not lie, as the parties are reciprocally bound in the penalty of £500, for the performance of the contract; that the action ought to *have been debt, or covenant on the deed. But my brethren all agree that no weight is to be given to that objection. This action has grown out of a subsequent transaction, distinct from and unconnected with the deed.
This brings me to the last, and perhaps the most important point in the case. It is not a little extraordinary that a question of every day’s occurrence, should have remained to this time unsettled ; and even in England, until Lord Ellenborough came to the bench, the question of interest seems to have been afloat. His lordship appears, lately, to have endeavored to lay down the rule with some degree of precision ; yet, in many cases, it still remains open for discussion. In the cases of De Havilland v. Bowerbank, and De Bernales v. Fuller, (1 Camp. 50, 2 Id. 426,) it is laid down that interest is recoverable on open accounts, where there has been an express promise to pay interest, where, from the course of dealing between the parties, it may be inferred that this was their intention, or where it can be proved that the money has been used, and that the interest has actually been made. This rule, as far as it goes, is conformable to the opinion by which I have been heretofore governed. But in the case of Calton v. Bragg, (15 East, 223,) Lord Ellenborough refused to allow interest on money lent, unless there was an agreement for the payment of the principal at a certain time, or for interest to run immediately, or under special circumstances from whence a contract for interest was to be inferred. On this subject I have-entertained a different opinion, and I think a different conclusion may be drawn from the rule laid down by Lord Ellenborough himself. If a person may recover *34 interest in an action for money had and received, where it is proved that the money had been employed, that fact, like every other, may be inferred from circumstances. And I should presume that the mere act of borrowing money furnished sufficient proof that it had been actually used. It could hardly be expected that a person would borrow money who had no use .for it. I am also .further of opinion, that wherever *money has been obtained by fraud, extortion, oppression, or by taking an undue advantage of the situation of the party, or by any unfair or unlawful means, that the manner of obtaining it furnishes sufficient evidence that it was done for the purposes of gain, and that the jury are authorized to give interest upon it. So, where it has been paid by mistake, if in the course of trade, and under circumstances which furnished pretty strong presumption that it must have been used, I left it to the jury, in their discretion, to allow interest or not, according to their view of the matter. And I believe the rules which I have laid down have been consonant with the general current of decisions in this State, although I am sensible some have been otherwise. The case of Smith and Taylor,{MS.,) has been reported to us from memory, in which it was decided, in this Court, that interest should not be recovered in an action for money had and received. But we do not know by what number of judges that case was decided, nor any of the circumstances by which to determine what respect it is entitled to. And as interest in such cases may or may not be recovered, according to circumstances, it may have been refused on some particular circumstance in that case, and not on general principles. I' should be willing to carry the doctrine farther, and allow interest in all cases on open accounts, where payment is to be made at-a certain time; but I think the contrary has been so well established by thejmiform current of decisions in this State, that it would now be a dangerous and unauthorized innovation. I am not aware of any other cases than those which I have mentioned, where interest has been allowed in this State on unwritten contracts.[1]
It is to be regretted, that, on a subject where it is so necessary that the law should be settled, my brethren are not prepared to join me in laying down some general rule. I have, however, given my own opinion, which may be a guide to those who are disposed to be governed by it, until it shall be overruled by higher authority. But we all agree that interest was properly ^allowed in the case now under consideration. Indeed, the Court is well satisfied with the verdict in all respects, except in giving the plaintiff the difference between the nett and gross weight of the cotton ; it was satisfactorily proved that the' nett weight of cotton is equal, and sometimes more, at the port of delivery, than the gross weight at the place where it is shipped. It is probable, then, that the defendant did not receive more freight on that article than he was entitled to by the charter party.
A new trial must therefore be granted, unless the plaintiff will remit the amount received on that account, with the interest thereon.
Gantt and Johnston, JJ., concurred.
Coloook, J., dissented.

 McC. 258.

 Post. 433.

 Mill. C. R. 394.

 See Post 214; 2 N. & McC. 496 ; 1 McC. 449 ; 3 McC. 563; 4 McC. 59; Ckeves, 62; 2 Strok. 484 ; 2 Sp. 596; 5 Rick. 298; 7 Rich. 125; 1 Bay, 105, 307, 357; 3 Brev. 506.