611 S.E.2d 323

Johnny McMILLAN, Jimmie Griner and
Hughsie Trowell, Respondents,

v.

SOUTH CAROLINA DEPARTMENT
OF AGRICULTURE, Appellant.

No. 3963.

Court of Appeals of South Carolina.

Heard Feb. 9, 2005.
Decided March 14, 2005.
Rehearing Denied April 21, 2005.

62

64

· Andrew F. Lindemann and William H. Davidson, II, both of Columbia, for Appellant.

John E. Parker and Ronnie L. Crosby, both of Hampton, for Respondents.

BEATTY, J.:

The South Carolina Department of Agriculture (SCDA) appeals the decision of the special referee finding Johnny McMillan and Jimmie Griner (collectively Respondents) were entitled to recover damages, pre-judgment interest, and attorney's fees from the Warehouse Receipts Guaranty Fund.[1] We affirm in part, and reverse in part.

## FACTS

McMillan and Griner are farmers in Hampton County. Each contracted with Hampton County Warehouse (the warehouse) to store cotton. The warehouse was a licensed facility by the SCDA pursuant to sections 39–22–10 through—200 of the South Carolina Code (Supp.2004). McMillan stored 1,180 bales of cotton and Griner stored 358 bales of cotton.

In addition to contracting with the warehouse for storage, Respondents both contracted with Sea Island Cotton Trading Company (the broker) to sell the cotton.[2] Approximately three months after entering the contract with the broker, Respondents each received an advance of 80 percent of the market price for cotton at that time with the understanding that when the market price increased the cotton would be sold as authorized by Respondents. Although warehouse receipts for the cotton indicated ownership was transferred to the broker, it is unclear from the record when this took place.

---

1. Because Hughsie Trowell's claim was paid in full, he is not a party in this appeal.

2. Hampton County Warehouse and Sea Island Cotton Trading Company were both owned by David Prosser.

The warehouse and the broker each declared bankruptcy in 1998. Respondents were unable to sell their cotton and failed to collect the remaining 20 percent owed for the cotton. Pursuant to the Warehouse Receipts Guaranty Fund and section 39–22–15 of the South Carolina Code (Supp.2004), Respondents filed claims with SCDA to recover the 20 percent loss they claim resulted from the warehouse's bankruptcy. The former director of SCDA denied the claims. In the denials, he noted the receipts indicating a sale to the broker and suggested Respondents seek other legal action. The denial makes no mention of any further administrative remedy, including no mention of an appeal of his decision.

Respondents then filed claims in bankruptcy court, seeking to collect the losses. However, the bankruptcy court, upon a finding that ownership was never transferred to the broker and remained with Respondents, rejected the claims.

Respondents then filed the underlying action, seeking to collect a "loss" from the Warehouse Receipts Guaranty Fund. SCDA filed a motion for summary judgment, arguing Respondents failed to exhaust their administrative remedies prior to bringing suit in circuit court. Circuit Court Judge Diane Goodstein denied the motion.

The Honorable Luke Brown, acting as special referee, heard the claim. At the hearing, McMillan and Griner each testified regarding their transactions with the warehouse and the broker. Both maintained they never sold the cotton to the broker, but merely received an advance. Each asserted ownership should not have been transferred to the broker.

Additionally, Louie Conder, former director of the warehouse system, testified extensively regarding the receipts issued to the broker and whether the receipts were proper under the statute or the regulations. He also testified Respondents had not been paid the full amount for their cotton.

The referee found Respondents had not transferred ownership of the cotton to the broker and the receipts were not valid. The referee concluded Respondents demonstrated a "loss" under section 39–22–15 and were entitled to recover the 20 percent still owed for the cotton. He also found Respondents were entitled to recover pre-judgment interest and attorney's fees.

SCDA filed a motion to alter or amend pursuant to Rule 52(b), SCRCP. The referee denied SCDA's requested relief. He found the action was not an appeal from an administrative decision, and Respondents were not required to exhaust administrative remedies. Finally, the referee set the award of attorney's fees to Respondents. This appeal followed.

## DISCUSSION

### I. Exhaustion of Administrative Remedies

■ SCDA contends the referee erred in finding Respondents were not required to exhaust their administrative remedies prior to filing suit in circuit court for damages. Additionally, SCDA maintains because section 22 of Article I of the South Carolina Constitution provides due process and requires an opportunity for an individual to be heard, Respondents still had administrative remedies that could be pursued. We disagree and find nothing requiring Respondents to exhaust administrative rights prior to bringing this action in circuit court.

■ First, this issue is not preserved for review on appeal. A party must raise the issue of the exhaustion of administrative remedies and receive a ruling by the trial court in order to preserve it for review on appeal. *Food Mart v. South Carolina Dep't of Health & Envtl. Control*, 322 S.C. 232, 233, 471 S.E.2d 688, 688 (1996). "A denial of a motion for summary judgment does not establish the law of the case, and the issues raised in the motion may be raised later in the proceedings." *Brown v. Pearson*, 326 S.C. 409, 416, 483 S.E.2d 477, 481 (Ct.App.1997).

While SCDA raised the issue in a summary judgment motion prior to trial, the issue was never raised to the referee until SCDA made its motion to alter or amend under Rule 52(b), SCRCP. Accordingly, the issue is not preserved because it cannot be raised for the first time in a motion to alter or amend. *See Patterson v. Reid*, 318 S.C. 183, 185, 456 S.E.2d 436, 437 (Ct.App.1995) ("A party cannot for the first time raise an issue by way of a Rule 59(e) motion which could have been raised at trial.").

The Administrative Procedures Act (APA) provides for judicial review of a contested case after agency action upon the partys exhaustion of administrative remedies. S.C.Code Ann. 1–23–380 (2005). Pursuant to section 1–23–310(3) of the South Carolina Code: " 'Contested case' means a proceeding including, but not restricted to, ratemaking, price fixing, and licensing, in which the legal rights, duties, or privileges of a party are required by law to be determined by an agency after an opportunity for hearing." S.C.Code Ann. § 1–23–310(3) (2005).

This court explicated:

"The doctrine of exhaustion of administrative remedies *only* comes into play when a litigant attempts to invoke the original jurisdiction of a circuit court to adjudicate a claim based on a statutory violation for which the legislature has provided an administrative remedy." *Med. Mut. Liab. Ins. Soc. of Md. v. B. Dixon Evander & Assocs.*, 92 Md.App. 551, 609 A.2d 353 (1992). A litigant need not exhaust administrative remedies where "there are no administrative remedies for the wrongs it assertedly suffered." *Id.* at 360.

*Thomas Sand Co. v. Colonial Pipeline Co.*, 349 S.C. 402, 413, 563 S.E.2d 109, 115 (Ct.App.2002).

In the instant case, a statutory procedure does not exist to provide an administrative remedy. There is no "contested case" for which the provisions of the APA would apply. As additional proof of the lack of remedies, the denial by the director of SCDA does not point to any further administrative avenues available to Respondents. The director of SCDA suggests bankruptcy or other legal proceedings may be available to Respondents. The denial does not mention the availability of an appeal or subsequent hearing of any type. Accordingly, as there are no administrative remedies set forth and available to Respondents, they should not be barred from bringing this action in circuit court.

Section 22 of Article I of the South Carolina Constitution states:

No person shall be finally bound by a judicial or quasi-judicial decision of an administrative agency affecting private rights except on due notice and an opportunity to be heard; nor shall he be subject to the same person for both

prosecution and adjudication; nor shall he be deprived of liberty or property unless by a mode of procedure prescribed by the General Assembly, and he shall have in all such instances the right to judicial review.

S.C. Const. art. I, § 22.

In discussing Section 22 of Article I, the South Carolina Supreme Court explained:

In recognition of the increasing number of governmental powers delegated to administrative agencies, South Carolina Constitution article I, § 22 was added to the 1895 Constitution in 1970 "as a safeguard for the protection of liberty and property of citizens." *Final Report of the Committee to Make a Study of the South Carolina Constitution of 1895,* p. 21 (1969).

. . .

We have interpreted this provision as specifically guaranteeing persons the right to notice and an opportunity to be heard by an administrative agency, even when a contested case under the APA is not involved. *Stono River EPA v. Department of Health and Environmental Control,* 305 S.C. 90, 406 S.E.2d 340 (1991).

*Ross v. Med. Univ. of South Carolina,* 328 S.C. 51, 68, 492 S.E.2d 62, 71 (1997).

■ Respondents filed a claim with SCDA, which was ultimately denied. Respondents have not claimed a violation of their due process rights under section 22 of Article I. Nor have they asserted they were deprived of notice or an opportunity to be heard. They have brought suit seeking to collect money damages owed pursuant to a statutorily created reimbursement fund. It does not appear section 22 of Article I was intended to be used by the agency to force a claimant to proceed under the Administrative Procedures Act when the agency does not have a procedure in place. Accordingly, we find the referee properly determined Respondents were not required to exhaust any additional administrative remedies prior to brining suit in circuit court.

## II. Type of Action

■ SCDA asserts the referee failed in determining the type of action involved in the underlying case. The SCDA

avers the action is an appeal from an administrative agency or an action under the Tort Claims Act and not an action for money damages. We find the issue is not preserved for review on appeal and, on the merits, the action would be in the nature of a declaratory judgment action or an action for money damages under a statute.

This issue was never raised to the referee for a ruling or a determination prior to the court's issuance of its final order. *See Wilder Corp. v. Wilke,* 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review."). Additionally, the first time it was raised to the court was in SCDA's motion to alter or amend. It is not appropriate to raise an issue for the first time in a Rule 52(b) motion that could have been raised at trial. *See Patterson v. Reid,* 318 S.C. 183, 185, 456 S.E.2d 436, 437 (Ct.App.1995) ("A party cannot for the first time raise an issue by way of a Rule 59(e) motion which could have been raised at trial.").

As discussed above, this case is not a continuation of an administrative process. There is no provision in the code or the regulations allowing for administrative hearings or requiring the Warehouse Receipts Guaranty Fund to follow the APA. Thus, SCDA's argument that this case is nothing more than an appeal of an administrative decision is without merit.

Additionally, this case does not fall within the auspices of the Tort Claims Act, section 15–78–10 of the South Carolina Code (2005). "The Tort Claims Act governs all *tort claims* against governmental entities and is the exclusive civil remedy available in an action against the government." *Washington v. Lexington County Jail,* 337 S.C. 400, 404, 523 S.E.2d 204, 206 (Ct.App.1999) (emphasis added). This is not a case in which Respondents brought suit based upon the government's negligence or to redress a tort committed by SCDA. They are bringing a suit to collect monetary damages pursuant to a section of the South Carolina Code, which establishes the fund to pay those damages. Therefore, the trial court did not err in finding the appeal was not covered by the South Carolina Tort Claims Act.

While section 39–22–15 of the South Carolina Code (Supp. 2004) does not specifically authorize a suit to collect money owed from the fund, it is clear the only means of redress would be a cause of action against the Warehouse Guaranty Fund for monetary damages or a declaratory judgment action. Accordingly, we find the underlying action is an action to collect monetary damages pursuant to statute, which authorizes the payment for a "loss."

## III. Loss

■ SCDA contends Respondents failed to prove they suffered a loss as a result of having cotton stored with the warehouse. SCDA maintains Respondents' loss is the result of the bankruptcy of the broker and not in any way connected to the storage of the cotton at the warehouse. We disagree.

According to section 39–22–15 of the South Carolina Code:

For purposes of this chapter, "loss" means any monetary loss over and beyond the amount protected by a warehouseman's bond sustained as a result of storing a commodity in a state-licensed warehouse including, but not limited to, any monetary loss over and beyond the amount protected by a warehouseman's bond sustained as a result of the warehouseman's bankruptcy, embezzlement, or fraud.

S.C.Code Ann. § 39–22–15 (Supp.2004).

Respondents each stored cotton in the warehouse at the time it declared bankruptcy. At that time, Respondents had each been paid an 80 percent advance by the broker and were waiting to sell their cotton to collect the remaining 20 percent. SCDA claims the loss was the result of the bankruptcy of the broker and not of the warehouse. SCDA asserts any additional payment to Respondents would have been from the broker. However, this ignores the fact that the warehouse also declared bankruptcy, thereby preventing Respondents from selling their cotton, whether through the broker or in any other fashion.

Section 39–22–15 only requires the parties to have suffered a loss "as a result of storing a commodity in a state-licensed warehouse." This occurred when the warehouse declared bankruptcy and Respondents were unable to sell their cotton for an appropriate price to recover the remaining 20

percent owed to them after their advance. Accordingly, we find Respondents demonstrated they suffered a loss compensable under section 39–22–15.

## IV. Receipts

■ SCDA contends the referee erred in finding Respondents' cotton was not sold to the broker. SCDA asserts the court erred in relying upon section 39–22–200 of the South Carolina Code and Regulation 5–493 to find the receipts issued by the warehouse were invalid and no transfer of the cotton occurred. We disagree.

Section 39–22–200 of the South Carolina Code states in pertinent part:

A state warehouse receipt must be issued by the warehouseman to a person storing commodities who requests it. . . . *No receipt may be issued in the name of the storing warehouse, or its owners, on commodities being purchased by the warehouse* until the commodity has been paid for in full, even if a contract has been executed establishing that the title to the commodity has passed to the warehouse or its owners unless the buyer and seller execute an affidavit within the contract stating that the seller conveys title and ownership of the commodity and forfeits all of his rights under the Dealer and Handler Guaranty Fund.

S.C.Code. Ann. § 39–22–200 (Supp.2004) (emphasis added). Additionally, regulation 5–493 provides:

G. *A warehouse receipt shall not be issued in the name of the purchaser of any commodity being purchased on a deferred-price, delayed payment or similar credit-type sale arrangement until the seller has received payment for the commodity in full* unless he has executed the affidavit relinquishing title and ownership to the buyer and forfeiting his rights under the Dealers and Handlers Guaranty Fund and has fully complied with the requirements set out in Section 39–22–200.

23 S.C.Code Ann. Regs. 5–493(G) (Supp.2004) (emphasis added). Finally, the definition of "commodity" is contained in regulation 5–490:

G. "Commodity" means:

(1) *Cotton.*

(2) "Non-perishable farm product" as defined by definition (F) or which may hereafter be included in this special definition.

23 S.C.Code Ann. Regs. 5–490(G) (Supp.2004) (emphasis added).

 "The words of a statute or regulation 'must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand its operation.'" *Sloan v. Greenville County*, 356 S.C. 531, 563, 590 S.E.2d 338, 355 (Ct.App.2003) (quoting *Hitachi Data Sys. Corp. v. Leatherman*, 309 S.C. 174, 178, 420 S.E.2d 843, 846 (1992)); *see also Ferguson v. Charleston Lincoln Mercury, Inc.*, 349 S.C. 558, 563, 564 S.E.2d 94, 97 (2002) ("When the statute's terms are clear and unambiguous, there is no room for an alternate construction, and courts must apply them according to their literal meaning.").

Initially, we disagree with SCDA's contention that section 39–22–200 has no application in this case. Although the section applies to "commodities being purchased by the warehouse," the circumstances of this case come within the ambit of that limitation. Griner testified that David Prosser was a broker with the Hampton County Warehouse, but was also the principal in Sea Island Cotton Trading Company. A review of the articles of incorporation for both entities confirms Prosser's dual involvement. Thus, even though the receipts in this case were issued to the broker and not the warehouse, that alone not would not preclude the application of section 39–22–200 given the Hampton County Warehouse and Sea Island Cotton Trading Company were essentially the same entity. Applying the requirements of section 39–22–200, we find the transfer from the Hampton County Warehouse was invalid given payment had not been made in full and the requisite affidavit conveying title and ownership of the cotton was not executed.

Furthermore, regulation 5–493 does not limit the purchaser to the warehouse. It expressly states: "A warehouse receipt shall not be issued in the name of the purchaser of any commodity being purchased on a deferred-price, delayed payment or similar credit-type sale arrangement until the seller has received payment for the commodity in full." As defined

in regulation 5–490, cotton is a commodity and would be covered by regulation 5–493.

SCDA maintains because regulation 5–493 requires the waiver of rights under the Dealer and Handler Guaranty Fund, and not the Warehouse Guaranty Fund, it should not be applicable. While it does reference the rights under one fund and not the other, there is nothing limiting it to claims under the Dealer and Handler Guaranty Fund. The first portion states very clearly how the regulation is to apply, and it explicitly prohibits issuing a receipt in the name of any purchaser of any commodity unless the seller has received full payment. *See Ferguson,* 349 S.C. at 563, 564 S.E.2d at 97 ("When the statute's terms are clear and unambiguous, there is no room for an alternate construction, and courts must apply them according to their literal meaning.").

▉▉▉ The receipts in the instant case were issued in the name of the broker, even though Respondents had not received full payment from the broker. Accordingly, under section 39–22–200 and regulation 5–493, the receipts were improperly issued and were not evidence of a sale of the cotton to the broker. Additionally, refusal to provide payment from the fund on the ground that the receipts were not issued in Respondents' name is not proper. Accordingly, we find the referee correctly concluded the receipts were invalid and ownership of the cotton remained with Respondents based upon the amounts they placed in the warehouse respectively.

## V. Pre-judgment Interest

SCDA asserts the referee erred in awarding Respondents pre-judgment interest. SCDA avers pre-judgment interest must be specifically pled, and Respondents failed to properly plead a claim for pre-judgment interest. In addition, SCDA contends Respondents' motion to amend the pleading was not sufficient to raise the claim. We agree.

▉▉▉▉ "In all cases of accounts stated and in all cases wherein any sum or sums of money shall be ascertained and, being due, shall draw interest according to law, the legal interest shall be at the rate of eight and three-fourths percent per annum." S.C.Code Ann. § 34–31–20(A) (1987). Pre-judgment interest must be specifically pled in order to be recov-

ered. *Hopkins v. Hopkins,* 343 S.C. 301, 307, 540 S.E.2d 454, 458 (2000); *Calhoun v. Calhoun,* 339 S.C. 96, 102, 529 S.E.2d 14, 18 (2000). "If no request for pre-judgment interest is made in the pleadings, it cannot be recovered on appeal." *Tilley v. Pacesetter Corp.,* 355 S.C. 361, 375, 585 S.E.2d 292, 299 (2003).

▆▆▆ Rule 15(b), SCRCP, governs amendments to conform to the evidence. "The rule covers two situations. First, if an issue not raised by the pleadings is tried by express or implied consent of the parties the court may permit amendment of the pleadings to reflect the issue. Second, if a party objects to the introduction of evidence as not being within the pleadings the court may permit amendment of the pleadings subject to a right to grant a continuance if necessary." *Sunvillas Home-owners Ass'n, v. Square D Co.,* 301 S.C. 330, 334, 391 S.E.2d 868, 870–71 (Ct.App.1990).

▆▆▆ In the instant case, there is no dispute Respondents failed to ask for pre-judgment interest in their complaints. The dispute is whether their motion to amend the complaint to conform to the evidence was sufficient to properly raise the issue.

At trial, when Respondents attempted through Griner's testimony to enter into evidence the issue of pre-judgment interest, SCDA objected. After the objection the court indicated: "All right. I'll look at [the complaint]. Go ahead. And I'll note your objection." Nothing further was ever ruled upon by the court. During McMillan's testimony, interest was mentioned a second time. However, it was a vague reference to the amount was owed. In addition, SCDA did not specifically object to the comment.

At the end of trial, Respondents stated: "I was just going to move to amend our pleadings to conform to any evidence to the extent there's evidence outside, you know, that—but I don't think there is." The court responded: "Well, I took the position that it asked for everything. I read your part of the complaint." No objection was made by SCDA.

We do not find the motion made by Respondents was sufficient to properly amend the complaint to include a claim for pre-judgment interest, which must be specifically pled in

order to be recovered. The motion was extremely general and not completely clear. Additionally, in making the motion, Respondents' counsel indicated he does not believe there is any evidence outside the complaint when he moves to "conform to any evidence to the extent there's evidence outside, you know, that—*but I don't think there is.*" (Emphasis added.) Accordingly, we find this motion was insufficient to properly raise the issue of pre-judgment interest. Because the issue was not pled in the complaint, nor included within the motion to amend, we find the referee erred in awarding pre-judgment interest. *Tilley,* 355 S.C. at 375, 585 S.E.2d at 299.

## VI. Attorney's Fees

 Finally, SCDA asserts the referee erred in awarding attorney's fees because the statute does not provide for an award of attorney's fees. We disagree and find the award appropriate.

We agree the statute does not specifically provide for recovery of attorney's fees. However, the code section does not explicitly exclude the attorney's fees as a "loss" to be recovered. In the instant case, we need not determine whether attorney's fees would be included as a "loss" under section 39–22–15, because we find attorney's fees are collectible under section 15–77–300 of the South Carolina Code.

Section 15–77–300 provides in part:

In any civil action brought by . . . any party who is contesting state action, . . ., the court may allow the prevailing party to recover reasonable attorney's fees to be taxed as court costs against the appropriate agency if:

(1) The court finds that the agency acted without substantial justification in pressing its claim against the party; and

(2) The court finds that there are no special circumstances that would make the award of attorney's fees unjust.

S.C.Code Ann. § 15–77–300 (2005).

▪ "On appeal, the trial judge's decision regarding an award of attorney's fees under this statute will not be disturbed absent an abuse of discretion." *Jasper County Bd. of Educ. v. Jasper County Grand Jury,* 303 S.C. 49, 51, 398 S.E.2d 498, 499 (1990).

We find Respondents are clearly the prevailing parties in this action. Thus, we must determine whether they have shown SCDA acted without substantial justification in pressing its claim and no special circumstances exist to make the award of attorney's fees unjust.

In *Heath v. County of Aiken*, 302 S.C. 178, 394 S.E.2d 709 (1990), the supreme court held "substantial justification," for the purposes of this statute, means justified to a degree that could satisfy a reasonable person. *Heath*, 302 S.C. at 183, 394 S.E.2d at 712. "An agency action supported by substantial justification is one which has a reasonable basis in law and fact." *McDowell v. South Carolina Dep't of Soc. Servs.*, 304 S.C. 539, 542, 405 S.E.2d 830, 832 (1991) (citing *Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)).

In determining whether there was substantial justification in this case, we look to the substance and outcome of the underlying matter. We find SCDA was without substantial justification in denying recovery from the Warehouse Guaranty Fund and in claiming Respondents must pursue administrative remedies that are not in place. We see no reason or circumstance to declare the award of attorney's fees unjust. Accordingly, we find the award of attorney's fees by the referee was proper under section 15–77–300.

## CONCLUSION

We find the referee properly concluded this was an action for money damages pursuant to a statute and Respondents were not required to pursue any additional administrative remedies prior to bringing suit under section 39–22–15. Additionally, we find the trial court properly concluded there was no sale of the cotton from Respondents to the broker, and Respondents proved they suffered a loss as a result of storing the cotton at the warehouse. Therefore, we conclude the award of the remaining 20 percent was proper. The award of attorney's fees was also justified under section 15–77–300. However, we find the award of pre-judgment interest was improper when it was not properly pled and Respondents'

motion to amend did not specifically include the claim for pre-judgment interest. Accordingly, the decision of the referee is

**AFFIRMED IN PART AND REVERSED IN PART.**

ANDERSON and SHORT, JJ., concur.