656 S.E.2d 765

**DIXIE BELL, INC., a South Carolina Corporation, Respondent,**

v.

**Larry C. REDD, Larry Clifton Redd, Bruce A. Green, and Triple Crown Land Development, LLC, Appellants.**

No. 4325.

Court of Appeals of South Carolina.

Heard Dec. 13, 2007.
Decided Dec. 20, 2007.
Rehearing Denied Feb. 14, 2008.

362

C. Rauch Wise, of Greenwood, for Appellants.

Harold P. Threlkeld, of Anderson, for Respondent.

ANDERSON, J.

Dixie Belle, Inc., (Dixie Belle) sued Larry C. Redd, Larry Clifton Redd, Bruce A. Green (collectively Triple Crown's principals), and Triple Crown Land Development, LLC (Triple Crown). The jury awarded Dixie Belle $100,000, and the trial court granted Dixie Belle's post-trial motion for pre-judgment interest. We reverse the award of pre-judgment interest.

### FACTUAL/PROCEDURAL BACKGROUND

In June 1999, Larry C. Redd and Larry Clifton Redd organized Triple Crown Land Development, LLC to buy and develop a tract of land in Aiken County, South Carolina. Dixie Belle became an investor in Triple Crown, contributing $950,000 ($400,000 cash and a $550,000 loan from Grand South Bank, secured by Dixie Belle's assets).

Dixie Belle sent Triple Crown and its principals a letter in September 2001 to commence negotiations to sell its interest in Triple Crown for $1,407,041.47. Triple Crown and its principals did not respond to the letter until June 2002, when Larry C. Redd sought out James Forrest (Forrest), Dixie Belle's sole shareholder, to discuss purchasing Dixie Belle's interest in Triple Crown.

Forrest testified he offered to sell Dixie Belle's interest for $1,412,000, the price in the initial letter plus interest from September to June. During his cross-examination, Forrest explained how he reached the figure: "You take all those four

things, Grand South, my money, the interest on my money, the interest on the Grand South note and you add ten percent to that and that's all I wanted."

Larry C. Redd, on direct examination, asserted he and Forrest never formed an agreement in June 2002. When asked if Forrest ever stated a price, Larry C. Redd answered:

No, he didn't. He said let him think over it, let him get back with us and he would get back and let us know something. We didn't go back down there, my accountant what was with me, we didn't got back down there for a month or so. He said, "I will fax you all something tomorrow," but he did not do that, he did not do what he said he would do.

On August 1, 2002, Triple Crown refinanced its property with Pacific Coast Investments (Pacific), borrowing $5,720,000. Forrest was not present at the closing. A portion of the Pacific loan was used to satisfy Dixie Belle's debt with Grand South Bank in the amount of $630,559.67. Both parties concede part of the purchase price for Dixie Belle's interest in Triple Crown would be the balance of the Grand South Bank loan. On August 12, 2002, Dixie Belle's attorney was given a $527,653 check for what Triple Crown and its principals believed to be the remainder of Dixie Belle's interest in Triple Crown.

Dixie Belle declares the balance of the amount due was $782,093.33, which was $254,440.33 more than Triple Crown and its principals tendered. When a resolution could not be reached, Dixie Belle sued Triple Crown and its principals on March 17, 2003, alleging four causes of action: (1) declaratory judgment to determine if Dixie Belle had a superior lien to Pacific Coast Investment Company; (2) an order to allow Dixie Belle to negotiate the check for $527,653.00 without prejudice to the claim the check did not represent full satisfaction of the purchase price; (3) conversion; and (4) violation of South Carolina Uniform Securities Act.

The parties agreed to dismiss all original causes of action, and the trial court submitted the dispute over the purchase price to the jury based on breach of contract and breach of contract with fraudulent intent claims. The jury returned a $100,000 verdict for Dixie Belle. In a post-trial motion, Dixie

Belle moved for pre-judgment interest on September 20, 2005, arguing:

Defendants agreed, as a matter of law, to pay Plaintiff One hundred thousand dollars ($100,000.00) on August 1, 2002 and because the obligation to pay the One hundred thousand dollars ($100,000.00) was by agreement demandable and the sum was certain or capable of being reduced to certainty, Plaintiff is entitled to pre-judgment interest through September 15, 2005.

On March 6, 2006, the trial judge granted Dixie Belle $27,352 in pre-judgment interest, stating: "The court finds and concludes that the obligation on which the judgment was based was fixed by conditions existing at the time the claim arose."

## ISSUES

1. Did the trial court err in awarding pre-judgment interest to Dixie Belle?

2. Did Dixie Bell establish the parties agreed to a sum certain, entitling it to pre-judgment interest?

## LAW/ANALYSIS

### 1. Historic Development of Pre–Judgment Interest

An excellent academic analysis of the historic development of the law involving the concept and principle of pre-judgment interest is found in *Vaughn Development, Inc. v. Westvaco Development Corp.*, 372 S.C. 576, 642 S.E.2d 757 (Ct.App. 2007), which articulates:

Historically, the recovery of prejudgment interest was severely limited. Michael S. Knoll, *A Primer on Prejudgment Interest* 75 Tex. L.Rev. 293, 294–98 (1996). "The roots of prejudgment interest law are based on centuries-old moral and religious proscriptions against interest and loans. Both the ancient Israelites and Greeks viewed the taking of any interest as usurious." Martin Oyos, Comment, *Prejudgment Interest in* South Dakota, 33 S.D. L.Rev. 484, 485–86 (1988). With the shift from agrarian economies in the common law European countries, and the emphasis in this country from the beginning on the mercantile influence,

prejudgment interest has become more favored and the courts now allow prejudgment interest on liquidated amounts. James L. Bernard, Note, *Prejudgment Interest and the Copyright Act of 1976* 5 Fordham Intell. Prop. Media & Ent. L.J. 427, 433 (1995). There has been, however, "growing dissatisfaction with the distinction between liquidated and unliquidated damages. As a result, many jurisdictions abandoned it.... With the breakdown and rejection of the distinction between liquidated and unliquidated damages, courts established more liberal rules for awarding prejudgment interest. Some courts looked to whether the claim was 'ascertainable.'" *Id.* at 434–436. This liberalization of prejudgment law has even led to recovery of prejudgment interest for personal injury damages, usually calculable from the time of a settlement offer or demand. *See generally* Diane M. Allen, Annotation, *Validity and Construction of State Statute or Rule Allowing or Changing Rate of Prejudgment Interest in Tort Actions* 40 A.L.R.4th 147 (1985) (cases and statutes cited therein).

Turning to South Carolina, we find an initial similar trend. In the early part of the last century in South Carolina, the law regarding prejudgment interest was strict. The failure of the party owing money to acknowledge a sum owed prevented a plaintiff from recovering prejudgment interest; the amount due had to be acknowledged and liquidated. *Wakefield v. Spoon,* 100 S.C. 100, 106, 84 S.E. 418, 420 (1915). However, even under this specific rule, the law surrounding prejudgment interest was muddled. *Goddard v. Bulow* 10 S.C.L. (1 Nott & McC.) 45, 56 (1817) ("It is not a little extraordinary that a question of every day's occurrence, should have remained to this time unsettled...."). Also similar to the trend in the United States, South Carolina liberalized the rules for awarding prejudgment interest. The governing statute looks to whether the claim is ascertainable. *See* S.C.Code Ann. § 34–31–20(A) (Supp. 2006) ("In all cases of accounts stated and in all cases wherein any sum or sums of money shall be ascertained and, being due, shall draw interest according to law ..."). "In South Carolina, interest may also be awarded in equity

cases, conversion cases, and property cases." 11 S.C. Juris. *Damages* § 8 (1992). *Id.* at 578–579, 642 S.E.2d at 758–759.

## 2. Request for Pre–Judgment Interest Must Be Pled

■ Triple Crown and its principals claim the trial court erred in awarding Dixie Belle pre-judgment interest on the $100,000 jury verdict because Dixie Belle did not request pre-judgment interest in its pleadings. We agree.

In *Town of Bennettsville v. Bledsoe,* 226 S.C. 214, 219, 84 S.E.2d 554, 556 (1954), our Supreme Court held pre-judgment interest should not be included in the judgment because it was not pled in the complaint or prayer. *Id. Town of Bennettsville* involved a claim against a contractor to recover overpayments made by the Town of Bennettsville on a construction contract. The Supreme Court reversed the trial court, holding: "The last contention of error is that interest should not have been included in the judgment which was rendered against [Bledsoe]. With this we agree because interest was not demanded in the complaint or prayer." *Id.* (citing *Rawls v. American Central Ins., Co.,* 97 S.C. 189, 204–205, 81 S.E. 505, 510 (1914)); *accord Calhoun v. Calhoun,* 339 S.C. 96, 102, 529 S.E.2d 14, 18 (2000) (finding pre-judgment interest must be pled absent an agreement to pay a sum certain); *Hopkins v. Hopkins,* 343 S.C. 301, 307, 540 S.E.2d 454, 458 (2000); *Chan v. Thompson,* 302 S.C. 285, 293, 395 S.E.2d 731, 736 (Ct.App. 1990) ("The Thompsons seek prejudgment interest . . . in their petition for rehearing. The Thompsons neither sought nor were awarded prejudgment interest in the lower court. They may not now raise this issue.").

In *Goodson v. Carolina Container Corp., Inc.,* 283 S.C. 575, 324 S.E.2d 67 (1984) pre-judgment interest was denied when the claim demanding pre-judgment interest was stricken from the record: "Inasmuch as it has agreed that Goodson's attorney consented to strike any reference to a claim for interest, the same should not have been sought at the trial level." *Id.* at 577, 324 S.E.2d at 68. The portion of the trial judge's order granting pre-judgment interest was reversed, because Goodson waived any claim to receive pre-judgment interest by not pleading it. *Id.*

■ An amendment to a complaint is sufficient to place the demand for pre-judgment interest before the trial judge. *Charleston County School Dist. v. Charleston County,* 297 S.C. 300, 303, 376 S.E.2d 778, 780 (1989). The motion to amend, nevertheless, must be clear and specific to include a claim for pre-judgment interest. *McMillan v. South Carolina Dep't of Agric.,* 364 S.C. 60, 611 S.E.2d 323 (Ct.App.2005) *cert. granted* (Feb. 14, 2007). In *McMillan,* counsel moved to conform the pleadings to any evidence not originally pled. *Id.* at 75, 611 S.E.2d at 331. On appeal, this Court ruled the motion to amend the pleadings was not sufficient to raise a pre-judgment interest claim: "We do not find the motion made by Respondents was sufficient to properly amend the complaint to include a claim for pre-judgment interest, which must be specifically pled in order to be recovered." *Id.*

In *Tilley v. Pacesetter Corp.,* 355 S.C. 361, 375–376, 585 S.E.2d 292, 299 (2003), a class action lawsuit for violation of the Consumer Protection Code, our Supreme Court elucidated:

> Buyers argue they are entitled to prejudgment interest from October 27, 1995, the date the action was filed, to April 3, 1997, the date of entry of summary judgment. We disagree.

> This Court requires parties to plead for pre-judgment interest in order for it to be recovered. *Hopkins v. Hopkins,* 343 S.C. 301, 540 S.E.2d 454 (2000); *Calhoun v. Calhoun,* 339 S.C. 96, 529 S.E.2d 14 (2000). If no request for pre-judgment interest is made in the pleadings, it cannot be recovered on appeal. *Id.* If pre-judgment interest is pled for in the complaint, it "is allowed on obligations to pay money from the time the payment is demandable, either by agreement of the parties or by operation of law, if the sum is certain or capable of being reduced to certainty." *Future Group, II v. Nationsbank,* 324 S.C. 89, 101, 478 S.E.2d 45, 50 (1996).

> In this case, the Buyers did not plead for pre-judgment interest in their original complaint of October 27, 1995, or in their amended complaint of January 23, 1996. Under the rule established in *Calhoun* and *Hopkins,* Buyers cannot now recover pre-judgment interest.

*See Durlach v. Durlach,* 359 S.C. 64, 75, 596 S.E.2d 908, 914 (2004).

Dixie Belle prayed for pre-judgment interest in its original complaint. Yet, Dixie Belle **voluntarily dismissed** all claims initially asserted and submitted its claim to the jury on a breach of contract and breach of contract with fraudulent intent claim, without seeking pre-judgment interest. Dixie Belle did not place the demand for pre-judgment interest on the claims submitted to the jury before the trial judge and cannot recover pre-judgment interest because it has not been specifically pled.

### 3. Pre–Judgment Interest Awarded on a Sum Certain

■ Triple Crown and its principals aver Dixie Belle did not establish its claim was a sum certain and is not entitled to pre-judgment interest by statute. We agree.

Section 34–31–20(A) of the South Carolina Code (Supp. 2006), provides statutory authority for pre-judgment interest: "In all cases of accounts stated and in all cases wherein any sum or sums of money shall be ascertained and, being due, shall draw interest according to law, the legal interest shall be at the rate of eight and three-fourths percent per annum." *See Jacobs v. American Mut. Fire Ins. Co. of Charleston,* 287 S.C. 541, 545, 340 S.E.2d 142, 144 (1986).

■ Our Supreme Court, in *Llewelyn v. Dobson Bros.,* 274 S.C. 177, 262 S.E.2d 726 (1980), recognized "[i]n the absence of agreement or statute, interest is not recoverable on an unliquidated demand." *Id.* at 178, 262 S.E.2d at 727 (citing *Robert E. Lee & Co. v. Comm. of Public Works of City of Greenville,* 248 S.C. 92, 100, 149 S.E.2d 59, 63 (1966); *Ancrum v. Slone,* 29 S.C.L. (2 Speers) 594, 596 (1844); 47 C.J.S. *Interest* § 19(a) (1946)); *Builders Transport, Inc. v. South Carolina Property & Cas. Ins. Guar. Ass'n,* 307 S.C. 398, 406, 415 S.E.2d 419, 424 (Ct.App.1992). "A claim is liquidated if the sum claimed is certain or capable of being reduced to a certainty." *Dibble v. Sumter Ice & Fuel Co.,* 283 S.C. 278, 287, 322 S.E.2d 674, 679 (Ct.App.1984) (citing *Columbia Lumber & Mfg. Co. v. Globe Indemnity Co.,* 166 S.C. 408, 415, 164 S.E. 916, 918 (1932); *Ancrum,* 29 S.C.L. (2 Speers) 594, 596; 22 Am.Jur.2d *Damages* § 180 (1965)); *Weeks v. McMillan,* 291 S.C. 287, 294, 353

S.E.2d 289, 293 (Ct.App.1987); *Republic Textile Equipment Co. of South Carolina, Inc. v. Aetna Ins. Co.,* 293 S.C. 381, 390, 360 S.E.2d 540, 545 (Ct.App.1987).

Not long ago, our Supreme Court explicated the sum certain requirement for pre-judgment interest in *Butler Contracting, Inc. v. Court Street, LLC,* 369 S.C. 121, 631 S.E.2d 252 (2006):

Stated another way, prejudgment interest is allowed on a claim of liquidated damages; i.e., the sum is certain or capable of being reduced to certainty based on a mathematical calculation previously agreed to by the parties. Prejudgment interest is not allowed on an unliquidated claim in the absence of an agreement or statute.

*Id.* at 133, 631 S.E.2d at 258–259. Finding Butler Contracting, Inc.'s claim was liquidated and a sum certain, the denial of pre-judgment interest was reversed. *Id.* at 134, 631 S.E.2d at 259. *See Future Group, II v. Nationsbank,* 324 S.C. 89, 101, 478 S.E.2d 45, 50 (1996); *BB & T of South Carolina v. Kidwell,* 350 S.C. 382, 391, 565 S.E.2d 316, 320 (Ct.App.2002); *Lee v. Thermal Engineering Corp.,* 352 S.C. 81, 88–89, 572 S.E.2d 298, 302 (Ct.App.2002); *Brooklyn Bridge, Inc. v. South Carolina Ins. Co.,* 309 S.C. 141, 145, 420 S.E.2d 511, 513 (Ct.App.1992); *Robbins v. First Federal Sav. Bank,* 294 S.C. 219, 225, 363 S.E.2d 418, 421 (Ct.App.1987); *Anderson v. Citizens Bank,* 294 S.C. 387, 398, 365 S.E.2d 26, 32 (Ct.App. 1987) *overruled on other grounds by Ward v. Dick Dyer & Associates, Inc.,* 304 S.C. 152, 157, 403 S.E.2d 310, 313 (1991); *Southern Welding Works, Inc. v. K & S Const. Co.,* 286 S.C. 158, 164, 332 S.E.2d 102, 106 (Ct.App.1985) (citing *Ancrum,* 29 S.C.L. (2 Speers) 594, 596).

The South Carolina Court of Appeals differentiated liquidated and unliquidated damages in *Beckmann Concrete Contractors, Inc. v. United Fire and Cas. Co.,* 360 S.C. 127, 131–132, 600 S.E.2d 76, 78–79 (Ct.App.2004):

In *Lewis v. Congress of Racial Equality,* 275 S.C. 556, 274 S.E.2d 287 (1981), our Supreme Court declared: "In liquidated-damages cases, the amount is usually a sum certain, or at least the amount is capable of ascertainment by computation." *Id.* at 560, 274 S.E.2d at 289. *Black's Law Dictionary* defines liquidated damages as "[a]n amount contractually stipulated" in contrast to unliquidated dam-

ages which are "[d]amages that ... cannot be determined by a fixed formula, so they are left to the discretion of the judge or jury." *Black's Law Dictionary* 395–97 (7th ed.1999). Liquidated damages "are damages the amount of which has been made certain and fixed either by the act and agreement of the parties or by operation of law to a sum which cannot be changed by the proof." 22 Am.Jur.2d *Damages* § 489 (2003). "They are also defined as damages the amount of which has been ascertained by judgment or by the specific agreement of the parties or which are susceptible of being made certain by mathematical calculation from known factors." *Id.* "In general, damages are unliquidated where they are an uncertain quantity, depending on no fixed standard, referred to the wise discretion of a jury, and can never be made certain except by accord or verdict." *Id.*

In *Southern Welding Works, Inc.*, the trial court's denial of pre-judgment interest was affirmed. 286 S.C. at 165, 332 S.E.2d at 106. The South Carolina Court of Appeals stated, "Prejudgment interest is allowed on liabilities to pay money from the time when, either by agreement of the parties or operation of law, the payment was demandable, if the sum is certain or capable of being reduced to certainty." *Id.* In finding an award of pre-judgment interest was inappropriate, the Court explained:

Southern proved the account was actually stated. However, in its answer K & S specifically denied the parties ever agreed it was a true account. Consequently, the burden was on Southern to prove agreement to the account as stated. In the record before us there is no evidence that K & S expressly or impliedly agreed there was at any specified time due to Southern the sum of money specified in the account. Likewise, we find no evidence that the parties agreed to a contract price for the repairs before they were performed.

*Id.* at 165–166, 332 S.E.2d at 106. *Southern Welding Works, Inc.* illustrates the necessity for an agreement between the parties when there is no operation of law to make the sum demandable. Because Southern could not prove an agreement with K & S that the sum was actually due, or demandable, pre-judgment interest was correctly denied. *Id.*

In *Wayne Smith Const. Co., Inc. v. Wolman, Duberstein, & Thompson*, 294 S.C. 140, 143, 363 S.E.2d 115, 117 (Ct.App. 1987), the Court of Appeals affirmed a pre-judgment award after finding a sum certain, noting:

Prejudgment interest, however, is allowed on an obligation to pay money "from the time when, either by agreement of the parties or operation of law, the payment is demandable, if the sum is certain or capable of being reduced to certainty." *Anderson v. Citizens Bank*, 294 S.C. 387, 365 S.E.2d 26, 32 (1987); *Robert E. Lee & Co. v. Commission of Public Works of City of Greenville*, 248 S.C. 92, 149 S.E.2d 59 (1966).

Here, the sum owed Smith Construction under each contract could be readily determined. Under each contract, the partnership was required to pay Smith Construction reimbursable costs, plus 10 per cent thereof as a contractor's fee upon the presentation by Smith Construction to the partnership of a waiver of liens and a certificate of occupancy. The mere fact that the partnership disagreed with Smith Construction regarding the amount of the reimbursable costs did not preclude an award of prejudgment interest. *Homes & Son Construction Co., Inc. v. Bolo Corp.*, 22 Ariz.App. 303, 526 P.2d 1258 (1974); *see Tappan & Noble v. Harwood*, 2 Speers (29 S.C.L.) 536 (1844) (wherein the court held in an action involving a contract to build two houses that, while the discount claimed by the defendant might reduce the amount due, it did not impair the claim for interest on the balance when adjusted by the jury's verdict).

*Id.* at 146–147, 363 S.E.2d at 119. This case emphasized the principle that an amount may be both a sum certain and disputed, and being contested does not necessarily preclude a pre-judgment interest award. *Id.*

Our Supreme Court clarified the analysis for pre-judgment interest in *Babb v. Rothrock*, 310 S.C. 350, 426 S.E.2d 789 (1993), when it held: "The proper test for determining whether prejudgment interest may be awarded is whether or not the measure of recovery, not necessarily the amount of damages, is fixed by conditions existing at the time the claim arose." *Id.* at 353, 426 S.E.2d at 791 (citing 47 C.J.S. *Interest & Usury* § 49 at 124–125 (1982)); *Keane v. Lowcountry Pediatrics, P.A.*, 372 S.C. 136, 147–148, 641 S.E.2d 53, 60 (Ct.App.2007);

*QHG of Lake City, Inc. v. McCutcheon*, 360 S.C. 196, 205, 600 S.E.2d 105, 109 (Ct.App.2004). Babb personally paid an obligation owed by a corporation in which he was a shareholder, without notifying Schild, another shareholder. *Babb*, at 352, 426 S.E.2d at 791. Babb did not request contribution or notify Schild until he brought suit. *Id.* The Court determined Babb was entitled to pre-judgment interest, but only from the date he filed suit, that being the date the claim arose: "Babb did not inform Schild that he had personally paid this obligation until he filed this suit three years after the payment was made. We hold under these facts that Babb is entitled to prejudgment interest only from the date the complaint was filed." *Id.*

More recently, in *Smith–Hunter Constr. Co., Inc. v. Hopson*, 365 S.C. 125, 128–129, 616 S.E.2d 419, 421 (2005), our Supreme Court upheld an award of pre-judgment interest on a breach of contract claim. The Court determined the sum demanded was ascertainable and established through the contractor's invoices. *Id.* The homeowners disputed the amount due, but the Court annunciated: "The mere fact that Homeowners disagreed with Builder regarding the amounts, which were stated in the invoices, representing completed work did not preclude an award of prejudgment interest." *Id.* at 129, 616 S.E.2d at 421. The trial court was affirmed "because the measure of recovery was fixed by conditions existing at the time the claim arose." *Id.*

*T.W. Morton Builders, Inc., v. von Buedingen*, 316 S.C. 388, 450 S.E.2d 87 (Ct.App.1994) advanced the principle that pre-judgment interest is not automatically applied to judgments. *Id.* at 399, 450 S.E.2d at 93. This Court acknowledged the well-settled rule that pre-judgment interest is appropriate where there is a sum certain, where parties agree, or where the law provides the payment is demandable. *Id.* In *T.W. Morton Builders, Inc.,* a home improvement contractor sued to foreclose on a mechanic's lien, and the special master found poor business practices on the part of both parties. *Id.* The Court concluded:

> T.W. Morton's success in proving the additional amount due for the renovations does not automatically translate into entitlement to prejudgment interest on the unpaid balance.

To establish its right to prejudgment interest, T.W. Morton had the burden of establishing a stated account and the parties' agreement, express or implied, that the account is a true statement due at a specific point. The master's implicit finding of no stated account is supported by the testimony of Dr. von Buedingen, who vigorously disputed the amount due T.W. Morton for cost overruns. We accordingly affirm the denial of pre-judgment interest.

*Id.* (internal citations omitted).

In the case *sub judice*, the action arose when the parties failed to reach an agreement on the purchase price of Dixie Belle's interest in Triple Crown. Dixie Belle's damages, however, were unliquidated, not entitling Dixie Belle to pre-judgment interest. The claim was unliquidated because: (1) there was no agreement between the parties as to a sum certain, (2) it could not be reduced to a sum certain by computation or formula, (3) the purchase price was not contractually stipulated, (4) it is not reduced to a sum certain by operation of law or a controlling statute, and (5) it could only be reduced to certainty by a jury determination. Furthermore, the conditions existing at the time the claim arose did not fix the measure of recovery. Accordingly, Dixie Belle's claim does not meet the statutory specifications of a sum certain, and Dixie Belle is not permitted pre-judgment interest.

### *CONCLUSION*

Dixie Belle did not plead for pre-judgment interest, nor did its damages qualify under the statute as liquidated or a sum certain. The pre-judgment interest awarded to Dixie Belle in the amount of $27,352 on the $100,000 jury verdict was in error. Therefore, we

**REVERSED.**

SHORT and WILLIAMS, JJ., concur.